**Marcel VERBRAEKEN,**
**Plaintiff–Appellee,**
**Cross–Appellant,**

v.

**WESTINGHOUSE ELECTRIC CORP.,**
**Defendant–Appellant, Cross–Appellee.**

**No. 88–3109.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 29, 1989.

---

Thomas P. Moran, Kevin W. Shaughnessy, Subin, Shams, Rosenbluth & Moran, Orlando, Fla., for defendant-appellant, cross-appellee.

Joseph Egan, Jr., Tobe Lev, Richard Paul Siwica, Egan, Lev & Siwica, Orlando, Fla., for plaintiff-appellee, cross-appellant.

Before POWELL *, Associate Justice (Retired), United States Supreme Court, RONEY, Chief Judge, and HILL, Circuit Judge.

HILL, Circuit Judge:

Mr. Marcel Verbraeken was an employee in the Renewal Parts Section of Westinghouse Electric Corporation's Power Generation Division Headquarters in Orlando, Florida. An economic downturn in the power generation business led Westinghouse to reduce its work force in 1983. A low score in an evaluation put Mr. Verbraeken below the cutoff to be retained. Mr. Verbraeken, then 61 years of age, retired pursuant to an advanced retirement program rather than be laid off.

Mr. Verbraeken then sued Westinghouse, claiming that his former employer had violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, (ADEA). A jury found that Mr. Verbraeken's age was a determinative factor in his layoff from employment by Westinghouse and awarded him $99,446.00 in compensatory damages. Due to the jury's additional finding that Westinghouse's violation of the ADEA was willful, the district court in its final judgment doubled the sum to be recovered by Mr. Verbraeken as a statutory liquidated damages award. Interest and costs also were awarded.

Both parties filed motions after entry of final judgment. Westinghouse filed a motion for judgment notwithstanding the verdict and, alternatively, a motion for a new trial. Each motion was denied without comment. Mr. Verbraeken moved to alter or amend final judgment pursuant to Federal Rule of Civil Procedure 59(e), or alternatively to grant further relief. He requested reinstatement to employment or front pay in the alternative, attorney's fees, prejudgment interest, and restoration

of all other employment benefits lost as a consequence of his termination (bridging of benefits). The district judge also denied his motion without comment.

Westinghouse appeals the denial of its motions for judgment notwithstanding the verdict and, alternatively, for a new trial. On cross-appeal, Mr. Verbraeken argues that the district court abused its discretion in denying, without explanation, his motion for supplemental relief which he insists is necessary for him to be made whole. Cross-appellant also has filed a motion for an award of appellate attorney's fees.

We affirm the district court's denial of appellant's motions. Regarding the cross-appeal, we remand to the district court with instructions that the court carefully articulate its rationale for denying Mr. Verbraeken's requested supplemental relief so that we may have a basis to review the district court's decision for an abuse of discretion. Cross-appellant is entitled to an award of attorney's fees for prevailing in an action under the ADEA. In addition, cross-appellant's motion for appellate attorney's fees is granted. The district court on remand is to assess the amount of attorney's fees to be awarded Mr. Verbraeken for the trial and appellate phases of this suit.

## I. APPEAL

### A. Motion for Judgment Notwithstanding the Verdict

In several recent cases, this court has reiterated the standard of review regulating a motion for judgment notwithstanding the verdict as set out in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969).[1] District courts and reviewing courts should:

---

* Honorable Lewis F. Powell, Jr., Associate Justice of the United States Supreme Court, Retired, sitting by designation.

1. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981. Recent cases following *Boeing*

include *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989); *Stanfield v. Answering Service, Inc.*, 867 F.2d 1290, 1293 (11th Cir.1989); *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1494–95 (11th Cir.1987); *Reynolds v. CLP Corp.*, 812 F.2d 671, 674 (11th Cir. 1987); *Michigan Abrasive Co. v. Poole*, 805 F.2d 1001, 1004 (11th Cir.1986).

consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied.... A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question.

411 F.2d at 374–75.

### 1. *Liability—Compensatory Damages*

Westinghouse challenges the jury's finding that Mr. Verbraeken's age was a determinative factor for his being selected to be laid off. Appellant maintains that Mr. Verbraeken's evidence of age discrimination was based on speculation and conjecture and therefore does not support the jury's verdict.

■ In a case brought pursuant to the ADEA, the plaintiff bears the ultimate burden of proving that age was a determinative factor in the employer's decision to terminate his employment. *See Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989); *Anderson v. Savage Laboratories, Inc.*, 675 F.2d 1221, 1224 (11th Cir.1982). Initially, the plaintiff must establish a prima facie case of age discrimination. If this is

done, the defendant has the burden of going forward and articulating a legitimate, non-discriminatory rationale for the discharge. Finally, if the defendant rebuts the presumption of discrimination, the plaintiff must prove by a preponderance of the evidence that the employer's asserted reason is merely a pretext for a discriminatory dismissal.[2]

■ There are three methods by which a plaintiff may establish a prima facie case of age discrimination: by direct evidence of discriminatory intent; by meeting the test originally set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); or by statistical proof of a pattern of discrimination. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989); *Young v. General Foods Corp.*, 840 F.2d at 828; *Buckley v. Hospital Corp. of America, Inc.*, 758 F.2d 1525, 1529 (11th Cir.1985). Mr. Verbraeken did not produce direct evidence of discrimination nor submit statistical evidence.

■ Utilizing a modified *McDonnell Douglas* test, a prima facie case may be established with circumstantial evidence by proving that the plaintiff (1) was a member of the protected group of persons between the ages of 40 and 70, (2) was subject to adverse employment action, (3) was replaced with a person outside the protected group, and (4) was qualified to do the job. The prima facie criteria of the *McDonnell Douglas* test are not intended to be rigidly applied. *See Carter*, 870 F.2d at 582, 583. In reduction-in-force cases such as the one at hand, the *McDonnell Douglas* test has been further modified by eliminating the replacement requirement; because "[i]n situations involving a reduction in force, ... the employer seldom seeks a replacement for the discharged employee." *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1557 (11th Cir.1987). A plaintiff in a reduction-in-force case may establish a prima facie case (1) by demonstrating that he was in a pro-

---

**2.** This circuit often has recited the standards regarding shifting burdens of persuasion set out in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207

(1981). *See, e.g., Stanfield,* 867 F.2d at 1293–94; *Young,* 840 F.2d at 828; *Mauter v. Hardy Corp.,* 825 F.2d 1554, 1557 (11th Cir.1987); *Anderson,* 675 F.2d at 1223–24.

tected age group and was adversely affected by an employment decision; (2) by showing that he was qualified for his former position or for another position at the time of being adversely affected; and (3) by producing circumstantial or direct evidence by which a factfinder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue. *Rollins v. Tech-South,* 833 F.2d 1525, 1532 (11th Cir.1987); *Mauter,* 825 F.2d at 1557; *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir.1987); *Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir. Unit B 1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982).

Mr. Verbraeken, at age 61, was within the protected group, and he was adversely affected by Westinghouse's offering him the "choice" between being laid off and accepting early retirement. With the exception of his final evaluation, Mr. Verbraeken received ratings of satisfactory or better throughout his career at Westinghouse.[3] Mr. Verbraeken testified that his knowledge of old machinery and the outdated methods of labelling diagrams of old machinery was valuable in his division that made renewal parts to maintain machinery in working order. There was sufficient evidence that he was qualified for his former position.

■ Mr. Verbraeken also presented sufficient circumstantial evidence, some of which is reviewed below, to raise an inference of age discrimination. In March 1983, Westinghouse introduced a new appraisal process, the Team Evaluation and Management System ("TEAMS" process), that originally was not supposed to affect employment. The TEAMS process included a team or peer evaluation resulting in a team evaluation (TE) score and a management survey producing a management score

(MS). The two scores were averaged to arrive at a composite TEAMS score. For the peer review, an employee was evaluated in eight categories by his supervisor and between three and nine of his fellow employees chosen by the employee. The management portion of the TEAMS process originally was supposed to involve a one-on-one review by the employee's supervisor of the TE score and the employee's performance. The peer evaluation was completed by June 1, 1983; Mr. Verbraeken received a TE score of 47, ranking him 98th out of 119 employees evaluated at that time.

In the ensuing summer, Westinghouse decided that a reduction in force would be necessary to cope with its economic difficulties. It chose the TEAMS process, believed to be producing the best information available, as a tool to identify initially those employees in jeopardy of layoff. The management portion of the process was modified to provide for evaluative input from more managers. Higher-ranking managers met with subordinate managers to rank employees; management's review focused on critical skills necessary to perform the functions that would survive the layoff. If no manager was sufficiently familiar with an employee's performance, or if the managers considered the TE score to be accurate, an employee would be given a MS equal to his TE score. Managers' scores differing from the TE score were averaged with the TE score to produce the MS.

A witness for plaintiff testified that Westinghouse, in an effort to reduce its work force and minimize layoffs, encouraged older employees, eligible for Westinghouse's Advanced Retirement Program II (ARP II), to retire early. ARP II began on March 1, 1983, at which time it was announced that the program would expire on September 1, 1983. ARP II provided in-

---

3. Westinghouse counters that although Mr. Verbraeken received satisfactory evaluations throughout his career, his supervisors' comments were not completely favorable. One of his former supervisors testified that Mr. Verbraeken "on the average was a good worker but he had problems meeting customer commit-

ments and deadlines." Another former supervisor testified that he had considered Mr. Verbraeken to be a very good employee, but he admitted on cross-examination that Mr. Verbraeken would have been towards the bottom of his list of employees, which included engineers, if he had had to reduce his force.

creased and enhanced benefits for employees choosing early retirement. Mr. Verbraeken testified that he had attended an informational meeting and had been given informational literature on ARP II during the summer of 1983, but he did not believe that he was financially able to consider early retirement. Both Mr. Verbraeken and Mr. Kurt Moren, Mr. Verbraeken's immediate supervisor who also was identified for layoff, testified that Mr. Moren suggested that Mr. Verbraeken seriously consider participating in ARP II. Mr. Moren also testified that his supervisor, Mr. David Spraker, in early to mid-August asked him if he would agree that Mr. Verbraeken's and another employee's performances were less than satisfactory. Mr. Moren refused to agree; he testified that no other supervisor asked him to evaluate Mr. Verbraeken.[4]

On August 19, the Commercial Operations Department managers met to determine employees' management scores. Mr. Verbraeken's MS was determined to be 35.5; this was 11.5 points lower than his TE score of 47. Of the approximately 130 employees evaluated at the meeting, only four others received management scores more than 5 points lower than their TE scores. Only one of those employees had a TE score near the eventual layoff cutoff. Mr. Verbraeken's MS of 35.5 was determined by averaging a score equal to his TE score of 47 and two scores of 30 given by Mr. Rosenthal and another manager, two of Mr. Verbraeken's non-immediate supervisors. The scores of 30 were lower than any employee's TE score. Mr. Rosenthal admitted that he had never personally observed Mr. Verbraeken at work and had never reviewed his personnel file. Mr. Verbraeken testified that one of the subordinate supervisors whom Mr. Rosenthal allegedly had relied on for an evaluation of Mr. Verbraeken also had never personally supervised him although he reported to him "on paper," and the other was Mr. Spraker, whom Mr. Moren testified had attempted to have Mr. Moren agree that Mr. Verbraeken was an unsatisfactory worker. There was no evidence presented regarding the other manager's basis of knowledge concerning Mr. Verbraeken's critical skills and work performance. When his TE score and MS were averaged, Mr. Verbraeken received a composite TEAMS score below the eventual cutoff line, placing him in the group identified for layoff.[5]

Mr. Verbraeken testified that on August 30, 1983 he heard a rumor that a list of those employees subject to be laid off in November, 1983 would be published on September 12th. He also heard that employees on that list who were eligible for early retirement had to apply for ARP II before it expired on September 1st. Mr. Verbraeken checked with his superiors, and Mr. Rosenthal and Mr. Spraker confirmed that Mr. Verbraeken was identified for layoff and that he had to have his ARP II application completed by the next day. Mr. Verbraeken completed the paperwork for ARP II on August 31st. Appellee maintains that because he had elected to retire early, he was not on the final list of those employees to be laid off and was not informed of the job assistance program and

---

4. The following is some of the evidence which Westinghouse presented in opposition to Mr. Verbraeken's evidence. Both a fellow ex-employee of Mr. Verbraeken and a member of Westinghouse's Human Resources Department testified that a meeting concerning ARP II was held in the spring when the program was introduced; neither remembered any such meeting being held in the summer of 1983. Mr. Moren had a longstanding poor relationship with Mr. Spraker and was among those laid off. In a pre-trial deposition, Mr. Verbraeken answered in the negative when questioned whether he had "ever talk[ed] with [his] supervisor about [ARP II]." Under cross-examination, Mr. Verbraeken explained that he and Mr. Moren never had a conversation about early retirement but that Mr. Moren had suggested it to him.

5. This court stated in *Young*, 840 F.2d at 831:

 ... we believe that [the employer's] offer of retirement to [the employee] is not probative of discriminatory intent in this case. Here there is no dispute that [the employer] decided to fire [the employee] *before* offering him the alternative choice of retirement. If [the employee] had been fired *after* having been requested to retire, the earlier retirement offer might in some cases allow an inference that age was a determinative factor in the termination.

procedures to appeal a layoff.[6] Some employees who were identified for layoff on September 12th successfully appealed and were taken off the list of those to be laid off; others were transferred to other departments.

Mr. Verbraeken presented sufficient evidence to have a jury conclude that he had established a prima facie case of age discrimination.

Westinghouse asserted in response that Mr. Verbraeken rated poorly in comparison to other employees when evaluated according to critical skills criteria that did not take age or salary into account. This poor evaluation by peers and management was reflected in a low TEAMs score that fell below the cutoff line separating retention and layoff. Specifically regarding the low MS score given to Mr. Verbraeken, Mr. Rosenthal testified that he assigned Mr. Verbraeken a score of "30" because it was lower than the TE scores of employees considered by his subordinate supervisors to be better performers and as having more critical skills than Mr. Verbraeken. Mr. Rosenthal averred that the managers, at the time of evaluating Mr. Verbraeken and determining his MS, did not know what the cutoff score would be separating those employees to be retained and those identified for layoff. He also claimed that, at the time of the management evaluation, he did not know that Mr. Verbraeken did not wish to retire early under ARP II. Westinghouse offered other evidence that it did not discriminate based on age, including evidence that other employees eligible for ARP II received high management scores and were not identified for layoff.

Mindful that we may not reweigh the evidence and substitute our judgment for that of the jury, we have reviewed the record in the light most favorable to the appellee, drawing all reasonable inferences in his favor, and have concluded that there is evidence of such quality and weight that fair-minded jurors, exercising impartial judgment, could reasonably have concluded that Mr. Verbraeken's age was a determinative factor for his being discharged by Westinghouse. The district court's denial of appellant's motion for judgment notwithstanding the verdict is affirmed with respect to compensatory damages.

### 2. *Willfulness—Liquidated Damages*

Appellant argues that there was insufficient evidence from which the jury could reasonably find that Westinghouse's decision to lay off Mr. Verbraeken was willful. In *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Supreme Court ruled that a violation of the ADEA is "willful" if "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [Act]." 469 U.S. at 128, 105 S.Ct. at 625. Westinghouse argues that the Eleventh Circuit should adopt a new standard and not follow the *Thurston* standard because it is supposedly almost impossible to apply. This court has stated that "this circuit has squarely adopted the *Thurston* standard;" we are bound by *Thurston.*[7] If alterations are needed, such changes must be left to the Supreme Court.

After reviewing the record in the light most favorable to Mr. Verbraeken, we conclude that there was substantial evidence, which we already have reviewed above, of such quality and weight that fair-minded jurors, exercising impartial judgment, could reasonably have concluded that Westinghouse either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act. Accord-

---

**6.** Mr. Verbraeken did participate in the job placement program after learning about it through fellow ex-employees. He did not appeal his layoff because he believed the appeal in October, 1983 would have been untimely, and when he made an inquiry into the appellate procedures, Mr. Collier, second-in-command of the Commercial Operations Department, allegedly advised that he take his pension and retire.

**7.** *Castle v. Sangamo Weston, Inc.,* 837 F.2d 1550, 1561 (11th Cir.1988) (citing *Spanier v. Morrison's Management Services, Inc.,* 822 F.2d 975, 978 (11th Cir.1987)); *Reynolds,* 812 F.2d at 675; *Lindsey v. American Cast Iron Pipe Co.,* 810 F.2d 1094, 1100 (11th Cir.1987) (*"Lindsey II"*) (rejecting a Third Circuit case requiring "outrageous" conduct).

ingly, the district court's denial of appellant's motion for judgment notwithstanding the verdict with respect to the award of liquidated damages is also affirmed.

### B. Motion for New Trial:

An appellate court uses the abuse of discretion standard to review a trial court's ruling on a motion for a new trial. *Rosenfield v. Wellington Leisure Products, Inc.,* 827 F.2d 1493 (11th Cir.1987). As this court stated in *Rosenfield:*

> This standard recognizes the deference that is due the trial court's first-hand experience of the witnesses, their demeanor, and a context of the trial. This level of deference is particularly appropriate where a new trial is denied and the jury's verdict is left undisturbed.

*Id.,* at 1498.

Westinghouse asserts that it is entitled to a new trial because it was denied a fair trial due to numerous errors allegedly committed by the district court. Most of the errors alleged by appellant involve the trial court's jury instructions that supposedly confused and misled the jury, preventing it from rendering a verdict in accordance with the law.[8] First, appellant maintains that the district court erroneously instructed the jury that Mr. Verbraeken's case involved his being "forcibly retired," "discharge[d]," "denied recall," and "not being considered for rehire." Appellant claims that none of these terms were used in Mr. Verbraeken's pleadings or in the pretrial stipulation that described the adverse employment action at issue to be Mr. Verbraeken's "layoff." The use of these other terms in the charge to the jury allegedly led to a trial of unplead and unstipulated issues. In particular, appellant argues that including "forced retirement" in the instructions was egregious error in light of the court's failing to instruct the jury, as requested by Westinghouse, that Mr. Verbraeken was collaterally estopped from raising the forced retirement issue because he was a class plaintiff who testified about his personal claim in another case, *E.E.O.C. v. Westinghouse Elec. Co.,* 632 F.Supp. 343 (E.D.Pa.1986), on the same issue regarding ARP II and lost.[9] At the beginning of the trial, the court had granted appellant's motion in limine to exclude the *E.E.O.C.* case and stated that it "would grant any motion in which the plaintiff would attempt to relitigate any issues that were tried in that case." In addition, Westinghouse complains that it was prejudiced by the court's mentioning appellee's allegation that appellant failed to "rehire or recall" appellee; appellant states that it was unable to prepare a defense on the failure to rehire or recall issue.

Second, Westinghouse asserts that during voir dire and again later in the jury charge, the trial court erroneously instructed the jury on the shifting burdens of proof in age discrimination cases. The court failed to distinguish between the burden of persuasion that always remains on the plaintiff, and the burden of production which shifts between the parties. After Mr. Verbraeken made out a prima facie case, Westinghouse merely should have been required to state a legitimate nondiscriminatory reason for conducting the layoff. Westinghouse claims that, instead, the jury instruction that was actually given shifted not only the burden of production but also the burden of persuasion to Westinghouse. Thus, the instruction allegedly absolved Mr. Verbraeken from coming forward and carrying his ultimate burden of showing that Westinghouse's legitimate, nondiscriminatory reasons for conducting the layoff were a pretext for age discrimination.

Westinghouse's final complaint about the jury charge involves the court's allegedly giving a conflicting charge regarding the definition of "willful" discriminatory con-

---

**8.** Appellant's additional allegations of evidentiary errors regarding the court's permitting the testimony of one of plaintiff's fellow ex-employees who received a low TEAMS score and chose early retirement and the admission into evidence of the EEOC file are without merit.

**9.** The Third Circuit reviewed the *E.E.O.C.* case on appeal. 869 F.2d 696 (3rd Cir.1989). The district court's ruling that ARP II does not violate the ADEA was not challenged on appeal. *Id.,* at 700, n. 6.

duct that would entitle plaintiff to liquidated damages. Appellant claims that the trial court first gave a correct definition of "willfulness" in accordance with *Thurston*; but then it also equated "willful" with "voluntary," thus allowing the jury to invoke too lenient of a standard in finding willful conduct.

Besides offering specific counter-arguments to the merits of Westinghouse's contentions, Mr. Verbraeken also counters with a comprehensive reply argument that Westinghouse at trial failed to object timely and distinctly to the alleged errors in the jury charge and thus did not preserve its right to object on appeal. We have reviewed the record and conclude that Westinghouse made sufficient objection to preserve the issues. We shall review the merits of appellant's objections to the jury charge.

■ First, we shall address appellant's charge that unplead and unstipulated issues were tried. We find no error in the court's use of the words "forcibly retired" in its description to the jury of Mr. Verbraeken's allegations. The litigation of the forced retirement issue in the *E.E.O.C.* case determined that ARP II was not, in and of itself, unlawful and that employees were not coerced into taking ARP II by its mere existence. In contrast, "forcibly retired," as used by the court in describing Mr. Verbraeken's claim, clearly was used to depict an allegation that Mr. Verbraeken was discriminatorily selected by Westinghouse to be laid off because of his age and thus was compelled to accept early retirement in order to avoid being laid off. We similarly find no error requiring a new trial order in the court's mentioning that Westinghouse failed to rehire or recall Mr. Verbraeken after his layoff.

In reviewing a trial court's jury instructions, an appellate court "look[s] to see whether the charges, considered as a whole, sufficiently instruct the jury so that the jurors understand the issues involved and are not misled." *Dempsey v. Mac Towing, Inc.*, 876 F.2d 1538 (11th Cir.1989); *Mark Seitman & Associates v. R.J. Reynolds Tobacco Co.*, 837 F.2d 1527, 1531 (11th Cir.1988); *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1525 (11th Cir.1985); *see also United States v. Dynalectric Co.*, 859 F.2d 1559, 1573 (11th Cir. 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989) ("We note that in reviewing the sufficiency of the jury instructions, we must examine the charge as a whole rather than isolating and examining the deficiencies of individual instructions.") "Reversal is warranted only if we are left with 'a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.'" *Mark Seitman & Associates*, 837 F.2d at 1531 (citing *Johnson v. Bryant*, 671 F.2d 1276, 1280 (11th Cir.1982) quoting *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1372 (5th Cir.1981)); *Pate v. Seaboard R.R., Inc.*, 819 F.2d 1074, 1080 (11th Cir.1987); *See also Somer v. Johnson*, 704 F.2d 1473, 1477–78 (11th Cir.1983) (quoting *Johnson*, 671 F.2d at 1280, "When the instructions, taken together, properly express the law applicable to the case, there is no error even though an isolated clause may be inaccurate, ambiguous, incomplete or otherwise subject to criticism.")

■ In regards to the instructions given on the burden of proof, the district judge did use some language that may have been misunderstood by the jury. During voir dire and the charge, the court stated that the burden of proof shifts from the plaintiff to the defendant without distinguishing between the burdens of persuasion and production. If these instructions were all that the court had given, we might be inclined to hold that this language may have produced a misunderstanding by the jury requiring a new trial. However, in statements made later in the charge, the district judge clearly instructed that the jury could not find for Mr. Verbraeken unless a preponderance of the evidence indicated that the plaintiff's age was a determinative factor in Westinghouse's adverse employment action. Thus, when the charge is considered as a whole, there is no doubt that a jury would understand that the burden of persuasion ultimately was on plaintiff.

■ Appellant correctly alleges that the trial court stated two definitions of "willful." However, considering as a whole the charge concerning the finding of willfulness necessary to award liquidated damages, we find that the instructions were sufficiently clear and not misleading.[10]

We find no error in the instructions to the jury which warrant a new trial.

## II. CROSS APPEAL

In his cross-appeal, Mr. Verbraeken challenges the denial of his motion to alter or amend final judgment pursuant to Federal Rule of Civil Procedure 59(e), or alternatively to grant further relief, including reinstatement to employment or front pay in the alternative, attorney's fees, prejudgment interest, and bridging of benefits. First, the attorneys' fees issue will be discussed separately.

After the district court without discussion denied cross-appellant's motion for supplemental relief on January 13, 1988, cross-appellant filed an application for attorneys' fees and costs on January 26, 1988. Within a week, affidavits and time records stating the number of hours his attorneys worked together with reasonable billing rates for services rendered were submitted in support of the application.

The district court did not rule on the application. Westinghouse argues that Mr. Verbraeken's request for attorneys' fees was untimely in that it was filed more than three months after judgment was entered. It also maintains that the application lacked sufficient supporting documentation.

■ A prevailing plaintiff in an ADEA action is entitled to an award of reasonable attorney's fees pursuant to 29 U.S.C. § 626(b) that incorporates 29 U.S.C. § 216(b) by reference.[11] *Ramsey v. Chrysler First, Inc.,* 861 F.2d 1541, 1544 (11th Cir.1988); *O'Donnell v. Georgia Osteopathic Hosp., Inc.,* 748 F.2d 1543, 1552 (11th Cir.1984); *Jones v. Central Soya Co., Inc.,* 748 F.2d 586, 588 (11th Cir.1984).

■ As far as this case is concerned, there is no local rule regarding the timeliness of an application for attorney's fees.[12] In *O'Donnell,* we held that, absent a controlling local rule, "only unfair surprise or prejudice may render untimely a post-judgment motion for attorney's fees." 748 F.2d at 1552. There was no unfair surprise or prejudice here. Cross-appellant included a request for attorney's fees in his post-judgment motion for supplemental relief which was filed eight days after judgment was entered. Affidavits and time records adequately listing hours and rates were

---

**10.** The district court instructed:

In order to find liquidated damages you must find first that the illegal discrimination against the plaintiff was a willful discrimination. By willful discrimination the defendant must have shown [sic] its conduct was prohibited by the Age Discrimination Act or showed a wreckless [sic] disregard for whether or not the lay off was prohibited under the Age Discrimination Act. A violations [sic] of the Age Discrimination Act is not willful if the defendant simply knew the potential applicability of the Act. If you find that the program used for laying off individuals at Westinghouse was adopted by Westinghouse in sincere believe [sic] and as a result of a responsible research and inquiry that that policy was not prohibited by the age discrimination statute then the willful implimentation [sic] of such a program, though violative of the Act, is not wilfull [sic] conduct justifying an award of liquidated damages.

**11.** Section 626(b) reads in pertinent part:

The provisions of this chapter shall be enforced in accordance with the powers, reme-

dies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section.

29 U.S.C. § 626(b) (1982).

Section 216(b) provides in pertinent part:

The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b) (1982).

**12.** Effective March 15, 1989, the Middle District of Florida added the following rule:

**RULE 4.18 APPLICATIONS FOR COSTS OR ATTORNEY'S FEES**

(a) All claims for costs or attorney's fees preserved by appropriate pleading or pretrial stipulation shall be asserted by separate motion or petition filed not later than thirty (30) days following the entry of judgment. The pendency of an appeal from the judgment shall not postpone the filing of a timely application pursuant to this rule.

submitted soon after filing an application for attorney's fees and costs upon learning that his motion for supplemental relief had been denied. On remand, the district court should review the affidavits and time records and award reasonable attorney's fees to Mr. Verbraeken.

Next, we consider cross-appellant's challenge to the district court's denial of the other forms of supplemental relief requested by cross-appellant in his post-judgment motion. Section 7(b) of the ADEA, 29 U.S.C. § 626(b), provides in part that "... [I]n any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion ..." The district court has broad discretion in selecting remedies as long as the relief granted is consistent with the purposes of the ADEA. *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1563 (11th Cir.1988); *Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435, 1448 (11th Cir.1985), *cert. denied*, 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985); *Robinson v. City of Fairfield*, 750 F.2d 1507, 1512 (11th Cir. 1985). As we stated in *Castle*, "[t]he purpose of the ADEA, insofar as the individual plaintiff is concerned, is to make the plaintiff 'whole,' to restore the plaintiff to the economic position the plaintiff would have occupied but for the illegal discrimination of the employer." *Castle*, 837 F.2d at 1561.[13] If a trial court refuses to grant further legal or equitable relief to a plaintiff who insists that such relief is necessary to make the plaintiff whole, it must articulate its rationale. *Id.*, 837 F.2d at 1563

("Should the district court again refuse to grant equitable relief to appellants, however, it must carefully articulate its rationale."); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280, 299 (1975) ("It is necessary ... that if a district court does decline to award backpay, it carefully articulate its reasons.") *See also Dickerson v. Deluxe Check Printers, Inc.*, 703 F.2d 276, 280 (8th Cir.1983) ("... a district court must 'carefully articulate' its rationale for refusing to compel employment of a plaintiff who has suffered discrimination"); *Blim v. Western Elec. Co., Inc.*, 731 F.2d 1473, 1478 (10th Cir.1984), *cert. denied sub nom. AT & T v. Technologies, Inc. v. Blim*, 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984).[14]

In this case, the trial judge, in denying the equitable relief that Mr. Verbraeken insisted was necessary to make him whole, did not explain his rationale for his decision. Therefore, it is impossible for this court to review the trial court's decision for abuse of discretion. The cross-appeal is remanded to the district court for it to articulate carefully its rationale for denying Mr. Verbraeken further relief.

## III. MOTION FOR APPELLATE ATTORNEY'S FEES

Mr. Verbraeken filed a motion for an award of appellate attorney's fees. In other cases in which a request for appellate attorney's fees has been made in a suit involving a claim brought under the ADEA, this court has stated that "appellate attorney's fees may be awarded pursuant to the remedial provisions of the FLSA that Congress incorporated into the ADEA when

---

13. For other cases recognizing that the purpose of remedies under the ADEA is to make successful plaintiffs whole, see *Hansard v. Pepsi-Cola Metropolitan Bottling Co.*, 865 F.2d 1461, 1469 (5th Cir.1989), *petition for cert. filed*, (June 21, 1989); *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1212 (7th Cir.1989); *Anastasio v. Schering Corp.*, 838 F.2d 701, 709 (3rd Cir.1988); *Blum v. Witco Chemical Co.*, 829 F.2d 367, 373 (3rd Cir.1987); *Spagnuolo v. Whirlpool Corp.*, 717 F.2d 114, 118 (4th Cir.1983); *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1097 (8th Cir. 1982).

14. The *Albemarle Paper* case involved a claim brought pursuant to Title VII of the Civil Rights Act of 1964. Claims brought under the ADEA were involved in *Castle, Dickerson*, and *Blim*. Because both Title VII and the ADEA have purposes of making victims of discrimination whole and authorize district courts to dispense equitable relief, the application of a requirement on the district court to "carefully articulate" its rationale for denying equitable relief is proper.

the appellate court considers such an award appropriate." *Ramsey v. Chrysler First, Inc.,* 861 F.2d 1541, 1545 (11th Cir. 1988) (quoting *O'Donnell v. Georgia Osteopathic Hosp., Inc.,* 748 F.2d 1543, 1553 (11th Cir.1984)); *Hedrick v. Hercules, Inc.,* 658 F.2d 1088, 1097–98 (5th Cir. Unit B 1981); *See also Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1557 (10th Cir. 1988); *Gilchrist v. Jim Slemons Imports, Inc.,* 803 F.2d 1488, 1502 (9th Cir.1986); *Cleverly v. Western Electric Co.,* 594 F.2d 638, 642–43 (8th Cir.1979). In both *O'Donnell* and *Ramsey,* the plaintiff-appellee successfully defended her or his verdict. In *Ramsey,* plaintiff-appellee's cross-appeal, contending he was entitled to pre-litigation attorney's fees and more front pay, failed. Appellate attorney's fees were awarded in both cases to the plaintiffs-appellees; the cases were remanded to the district courts with instructions to assess the amount of appellate attorney's fees to be awarded.

Mr. Verbraeken successfully defends appellant's challenge to the district court's verdict of a violation of the ADEA and award of compensatory and liquidated damages. With regards to his cross-appeal, we remand to the district court to award attorney's fees to the successful plaintiff and to describe its rationale for denying Mr. Verbraeken's requested forms of equitable relief. An award of attorney's fees for this appeal is appropriate. On remand, the district court is instructed to assess the amount of appellate attorney's fees to be awarded Mr. Verbraeken.

AFFIRMED in part and REMANDED.