**Sammy WILSON, Plaintiff–Appellee,**

v.

**AAA PLUMBING POTTERY CORPORATION, Defendant–Appellant.**

No. 93–6406.

United States Court of Appeals, Eleventh Circuit.

Oct. 11, 1994.

Ralph K. Strawn, Jr., Gadsden, AL, for appellant.

Mary A.R. Stackhouse, Philip E. Miles, William R. Willard, Jr., Gadsden, AL, for appellee.

Before HATCHETT and EDMONDSON, Circuit Judges, and SMITH *, Senior Circuit Judge.

HATCHETT, Circuit Judge:

Applying the rule announced in *Mitchell v. Worldwide Underwriters Insurance Co.*, 967 F.2d 565 (11th Cir.1992), in the context of this race-discrimination case, we affirm the district court's ruling that appellant violated Title VII of the Civil Rights Act of 1964.

## FACTS

In 1978, AAA Plumbing Pottery Corporation (AAA) hired Sammy Wilson, an African–American man with three years of college, as a security guard, a non-union, hourly rate position without profit-sharing benefits. In 1983 and 1984, AAA hired Gene Minton and J.D. Robinson, two younger white men, who Wilson helped train as security guards. Although neither Minton nor Robinson possessed any college training, AAA promoted both to the position of foreman, a salaried position with profit-sharing benefits.

In 1985, AAA decided to stop employing security guards and began using foremen to walk the rounds. Pursuant to the change, AAA transferred Wilson to a full-time janitor position, a non-union, hourly rate job without profit sharing. AAA did not reduce Wilson's pay, and he worked as a janitor for approximately two years. In about 1988, AAA installed entrance-focused surveillance cameras and asked Wilson to assist the foremen in making rounds similar those he made as a security guard. AAA believed that splitting Wilson's time between janitor and security guard better utilized his hours. Although Wilson received annual raises, he did not receive any increase associated with the increased duties.

On September 20, 1990, AAA fired Wilson, after deciding to contract for janitorial ser-

vices, stating that it lacked sufficient work to keep Wilson full-time. For approximately one week after firing Wilson, AAA employed Dana Vaughn, the daughter of one of its full-time employees, Becky Vaughn, to perform the janitorial duties. Then, for approximately one year after firing Wilson, AAA contracted with Heard Janitorial Services (Heard), an African–American owned company employing African–American workers to clean the front offices for $225 to $300 per month. After terminating its relationship with Heard, AAA gave the janitor job to one of its own employees, Tina Norris. When Norris no longer wished to do janitorial work, AAA gave the job to Brandy Vaughn, another daughter of Becky Vaughn. At the time of trial, Brandy Vaughn continued doing the janitorial work. Dana Vaughn, Brandy Vaughn and Tina Norris are white females.

AAA never offered Wilson the janitorial job on a part-time basis, or at a reduced salary, or another position with the company. After AAA fired Wilson, he sought and received his company pension benefits. Since firing Wilson, AAA has used foremen and shift supervisors to perform the security guard functions.

## PROCEDURAL HISTORY

On December 3, 1991, Wilson filed this lawsuit against AAA in the United States District Court for the Northern District of Alabama, alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 and age discrimination in violation of the Age Discrimination and Employment Act.**

Following a bench trial, the district court concluded that based on the facts presented, it could not assess the quality of Wilson's work or the services provided by "Heard or the part-time white female employees." The court also found that AAA gave a white male supervisor, Frank Mabry, the job of watchman (similar to security guard) when he no longer could perform his supervisory tasks due to health problems. While working as watchman, Mabry maintained his profit sharing eligibility. The court also found that

---

* Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

** Wilson later amended his complaint to add claims under 42 U.S.C. § 1981A and Title VII as amended by the Civil Rights Act of 1991.

although Wilson performed watchman duties from 1989 to 1990, he never received profit-sharing benefits.

The district court issued its findings of fact and conclusions of law on January 7, 1993. In its decision, the district court found that AAA did not discriminate against Wilson in abolishing the full-time job of security guard and office janitor, but found that AAA discriminated against him when it failed to offer him "at least a part-time janitorial job at the same rate of pay that it could contract for."

On February 17, 1993, the district court conducted a supplemental hearing to consider AAA's reasons for not offering Wilson part-time work and Wilson's claim for equitable relief. Following the hearing, the district court supplemented its findings, concluding AAA failed to offer a nondiscriminatory reason for its actions; and therefore, it discriminated against Wilson on the basis of race, but not age. Based on these findings, the district court directed AAA to pay Wilson for the period of time following his termination, October, 1990, through April, 1993, at a rate of $300 per month, and to reinstate him to the position of janitor or a comparable part-time position as of May 1, 1993. The district court also ruled that Wilson's hours and rate of pay remain the same as the person last paid for doing similar work. After the district court resolved all post-trial motions, AAA appealed.

## CONTENTIONS OF THE PARTIES

AAA contends that the district court's finding that its failure to offer Wilson the part-time janitor position constitutes intentional race discrimination is contrary to the law of this circuit and lacks support in the record. Wilson contends that the district court's finding of intentional race discrimination was not clearly erroneous and was based upon the proper legal standards under Title VII.

## ISSUE

Although AAA attempts to fragment this case into several sub-issues, at the core of the dispute lies one question: whether the district court's finding that AAA discriminated against Wilson on the basis of race when it failed to consider him for the position of part-time janitor is contrary to the facts and to the law.

## DISCUSSION

Title VII of the Civil Rights Act of 1964, provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (1988). Although a plaintiff may establish a prima facie case of discrimination under Title VII with direct evidence of discriminatory intent or statistical proof of a pattern of discrimination, the more common approach is to apply the well-established methodology from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir.1989), *cert. dismissed*, 493 U.S. 1064, 110 S.Ct. 884, 107 L.Ed.2d 1012 (1990). Under the *McDonnell Douglas* test, a prima facie case of race discrimination is established with circumstantial evidence when a plaintiff: (1) belongs to a racial minority; (2) was subjected to adverse job action; (3) was replaced by someone outside the protected group; and (4) was qualified to do the job. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. *See Verbraeken*, 881 F.2d at 1045 (11th Cir.1989) (applying modified *McDonnell Douglas* test to establish prima facie case of age discrimination under Age Discrimination in Employment Act).

The methodology outlined in *McDonnell Douglas*, is not subject to rigid application, rather it envisions a flexible approach and lends itself to application in a wide variety of circumstances. *Carter v. City of Miami*, 870 F.2d 578, 582–83 & n. 12 (11th Cir.1989). Thus, in situations such as this, where the employer reduces its workforce and does not replace the discharged employee, "the fourth prong of the prima facie case is altered to require the plaintiff to 'produce evidence circumstantial or direct,

from which the factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1557 (11th Cir.1987) (quoting *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. Unit B 1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982)).

██ Altering the fourth prong of the *McDonnell Douglas* test for application to reduction in force cases, permits a prima facie showing of discrimination if the plaintiff: (1) demonstrates membership in the protected group; (2) proves discharge; (3) shows qualifications for another position at the time of discharge; and (4) produces evidence which allows a fact-finder to reasonably conclude that the employer intended to discriminate on the basis of race in failing to consider the plaintiff for another position. *See Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 567–68 (11th Cir.1992) (applying modified *McDonnell Douglas* test to reduction in force, age discrimination case); *Verbraeken*, 881 F.2d at 1045–46. Although both *Mitchell* and *Verbraeken* involved age discrimination claims, their extension of the four pronged test to reduction in force cases applies to other forms of discrimination because the *McDonnell Douglas* methodology must be applied flexibly. Rigid application would negate the purpose of the test. *Carter*, 870 F.2d at 582–83 & n. 12. Thus, the modified *McDonnell Douglas* test for reduction in force cases is equally applicable to cases involving race discrimination.

██ Wilson satisfied the first three elements of *Mitchell* because he is African–American, and he proved that AAA discharged him when it decided to contract janitorial services, even though he performed that function without complaint for several years. Although AAA concedes that Wilson is a member of a protected class, and was discharged although qualified for an existing position, it contends that "[n]o reasonable inference [of intentional discrimination] can arise from" AAA's failure to offer him the part-time janitor position.

Based on the evidence presented at trial and during the supplemental hearing, the district court found "that [Wilson] was the victim of intentional [race] discrimination with reference to the janitorial work." These constitute "findings of fact which will be overturned on appeal only if they are clearly erroneous." *Smith v. PAPP Clinic, P.A.*, 808 F.2d 1449, 1451 (11th Cir.1987). We review the record to determine whether facts exist which are consistent with and support the district court's findings.

The district court based its conclusion that AAA intentionally discriminated against Wilson in part "on a finding of disparate treatment with regard to the white employee [Frank Mabry] whose situation was accommodated." As discussed above, AAA transferred Frank Mabry, a white supervisor, to the position of watchman when he was no longer able to perform his regular duties for health reasons. When Wilson's full-time janitor position was dissolved, however, AAA did not accommodate Wilson in a similar manner.

██ AAA contends that its failure to accommodate Wilson is not probative of its intent to discriminate because Mabry and Wilson were not in similar jobs or circumstances when AAA altered the terms of their employment. We disagree. AAA's willingness to accommodate a white employee unable to perform his usual job functions while firing an African–American janitor capable of performing his job functions, when contracting for janitorial service, is circumstantial evidence of disparate treatment. As such it is probative of AAA's intent to discriminate against Wilson.

In any event, the record contains other circumstantial evidence supporting the district court's findings. During his twelve year tenure, AAA never offered Wilson a promotion to a union position. In fact, AAA passed Wilson over on at least two occasions to promote less experienced, less educated white employees Wilson had helped train. Likewise, at the time it decided to contract for janitorial services, AAA did not offer Wilson an alternative position. Moreover, immediately after firing Wilson, AAA employed a young white woman to perform the janitorial services. Although an African–American owned company, employing African–American employees performed the janitorial services for one year, AAA ultimately employed, and still employs, its own white employees to do Wilson's old job. Finally,

when offered an opportunity to rebut the inference of intentional race discrimination, AAA failed to articulate a nondiscriminatory reason why it refused to offer Wilson the part-time job.

In the aggregate, these facts constitute strong circumstantial proof of intentional race discrimination and support the inference that AAA did not offer Wilson the part-time janitor position because of his race. Because evidence in the record supports the district court's findings, we hold that they are not clearly erroneous. *Smith,* 808 F.2d at 1451.

■ Next, AAA contends that the *Mitchell* analysis does not apply in this case because AAA did not contract for the entire job (both security guard and janitorial duties), but only a portion of the job (the janitorial duties). We reject this distinction because it unnecessarily constrains the prima facie methodology of *McDonnell Douglas* and *Mitchell* by creating an inflexible rule protecting employers from liability anytime they contract for only a portion of a job. *Carter,* 870 F.2d at 582, 583. More important, such a result would undermine the most basic purpose behind Title VII: to prevent discrimination in employment by removing "artificial, arbitrary, and unnecessary barriers to employment [which] ... operate invidiously to discriminate on the basis" of race, color, religion, sex, or national origin. *Griggs v. Duke Power Co.,* 401 U.S. 424, 430–31, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971); *see* 42 U.S.C. § 2000e–2(a)(1). Although we reject this *per se* rule which AAA suggests, this decision in no way relieves plaintiffs from proving unlawful discrimination when an employer is alleged to have failed to offer the plaintiffs a part-time position before firing them.

■ Finally, AAA argues that the district court's finding of intentional discrimination was improper because Wilson failed to apply for the position of part-time janitor. This court has squarely rejected such an approach:

> The prima facie criteria of the *McDonnell Douglas* test are not intended to be rigidly applied. In reduction-in-force cases such as the one at hand, the *McDonnell Doug-*

*las* test has been further modified *by eliminating the replacement requirement; be*cause "[i]n situations involving a reduction in force, ... the employer seldom seeks a replacement for the discharged employee."*

*Verbraeken,* 881 F.2d at 1045 (emphasis added) (citation omitted) (quoting *Mauter,* 825 F.2d at 1557).

AAA raises several additional challenges to the district court's legal conclusions and findings of fact. Because we have addressed the core of AAA's arguments and its remaining contentions either lack merit or rely upon those arguments we have already rejected, further discussion is unnecessary.

## CONCLUSION

Because the district court's finding that AAA intentionally discriminated against Wilson when it failed to offer him the part-time janitorial position is not clearly erroneous and comports with the legal standards announced in *Mitchell v. Worldwide Underwriters Insurance Co.,* 967 F.2d 565 (11th Cir.1992), we affirm the district court.

## AFFIRMED

EDMONDSON, Circuit Judge, dissenting.

I have the bad luck to disagree with my colleagues about this case. And, I need to protest a judgment that I am pretty sure is neither commanded by the law nor right.[1]

Whether a company will staff itself with full-time employees, part-time employees, independent contractors or some mix is a core business decision. Nothing in Title VII obligates a company to choose one work force or another; and the different kinds of work forces present different advantages and disadvantages for business management. In this case, AAA Plumbing decided to contract out its need for janitorial service as opposed to having the work done, as it had been done, by a full-time employee. AAA says the decision to use an independent contractor was motivated by a desire to cut costs: a legitimate business reason. (The decision, according to the district court, was cost-effective for AAA.)

---

**1.** In general, I—like many judges—think it is, given the needs and goals of the law and this court, useless and undesirable to express dissent, even when I believe a decision is clearly wrong.

I do dissent now and briefly set out my reasons because I think today's judgment is unusually important or, at least, may in time come to be seen as having an unusually important effect.

In the light of AAA's decision to use an independent contractor for its janitorial service needs, the person—an African–American—who had been employed by AAA as a janitor was let go. There is no proof or contention that he was qualified for any other available job that AAA had then. Under our precedents, this fact should have ended the matter. *See Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1082–83 (11th Cir.1990) (in reduction-in-force case, plaintiff "must show that he was qualified for another available job with that employer; qualification for his current position is not enough"). No Title VII violation was proved.

But, the district court and this court now say that the law requires an employer to create a new job category—part-time employee for janitorial services—to "accommodate" the man who was let go. I do not think so, especially since no evidence in this case shows that AAA had a custom of abolishing full-time jobs and then creating part-time jobs to accommodate whites.[2]

I agree with Mr. Justice Holmes: "[T]he most enlightened judicial policy is to let people manage their own business in their own way, unless the ground for interference is very clear." *Dr. Miles Medical Co. v. John D. Park & Sons Co.,* 220 U.S. 373, 411, 31 S.Ct. 376, 386, 55 L.Ed. 502 (1911) (Holmes, J., dissenting). *See generally Furnco Construction Corp. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978) ("Courts are generally less competent than employers to restructure business practices, and unless mandated to do so by Congress they should not attempt it."), *Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 661, 109 S.Ct. 2115, 2127, 104 L.Ed.2d 733 (1989) ("the judiciary should proceed with care before mandating that an employer must adopt a plaintiff's alternate selection or hiring practice").

The district court and this court seem to think that Title VII requires employers to offer minority employees an opportunity to "match" an outside independent contractor's price for the work, before the employer may contract the work out lawfully. This law is new to me. Where does it come from? It is unexpected, and it hits hard at management's traditional right to run a business as management thinks best.[3]

No amount of repeating the mantra "flexibility" justifies such judicial interference with a business. Judicial power to interfere with a private business is rigidly limited by the law. *Mitchell v. Worldwide Underwriters Insurance Co.,* 967 F.2d 565 (11th Cir.1992), and the other cases cited by today's court have nothing to do with creating different jobs or restructuring work forces—including a change from full-time employees to part-time employees—to "accommodate" employees who are discharged for nondiscriminatory reasons. None of Title VII's provisions empower the courts to force businesses to be nice to their employees. The legal basis for interfering with AAA Plumbing is, to say the least, unclear.

I would reverse the district court's judgment.

---

**2.** Even if an isolated instance like Frank Mabry's might otherwise count for something, Mabry's circumstances are in no way like Sammy Wilson's. For example, Mabry's job was not abolished for business reasons.

**3.** The district court's fact finding on discrimination is hard for me to follow. At one point, the court says: "This court cannot conclude that plaintiff was a victim of intentional discrimination with regard to the decision in 1990 to abolish his job." Later the district court wrote that it did not intend to hold there was no discrimination in the decision to use an outside contractor to do the janitorial work. The district court then finds discrimination, but I believe the fact finding is undermined by legal errors. The discrimination found was based on the failure of the company to offer Wilson the chance to be a part-time employee and match the independent contractor's price. Because AAA had no duty to make such an offer, the failure to do so cannot be racially discriminatory, particularly given the absence of a custom of making like offers to whites. Fact finding based on an incorrect application of law is not binding on this court. *Inwood Laboratories v. Ives Laboratories,* 456 U.S. 844, 855 n. 15, 102 S.Ct. 2182, 2189 n. 15, 72 L.Ed.2d 606 (1982).