**Joanne H. HILL, Plaintiff,**

v.

**WINN–DIXIE STORES, INC.,
Defendant.**

**No. 88–91–CIV–T–13(A).**

United States District Court,
M.D. Florida,
Tampa Division.

July 18, 1989.

See also, 699 F.Supp. 876.

Robert V. Williams, Taub and Williams, Tampa, Fla., for plaintiff.

Peter W. Zinober, Zinober and Burr, Tampa, Fla., for defendant.

## OPINION

VARNER, District Judge.

This cause is now before the Court on Defendant's Motion for Judgment Notwithstanding the Verdict filed May 16, 1989, and on the briefs submitted in support of and in opposition to said motion.

Both sides agree that the tests set out by the United States Court of Appeals for the Eleventh Circuit in *Rabun v. Kimberly–Clark Corp.,* 678 F.2d 1053, 1057 (11th Cir.1982), are controlling as a test of whether or not the motion should be granted. The parties, however, emphasize different parts of the *Rabun* Court's opinion at 1057. The Movant/Defendant quotes the following:

"On motions for judgment notwithstanding the verdict, the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men might reach different conclusions, the motion should be denied." [1]

The Defendant selects the following language from *Rabun,* supra, 1057:

"The fundamental principal is that there must be a minimum of interference with the jury. As good a statement of the test as any is from a recent decision of the Second Circuit: Simply stated, it is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached."

The suit was filed claiming damages for violation of the Juror Protection Act, 28 U.S.C. § 1875.[2] Overly simplified, Plaintiff was summoned to serve on a federal jury in Tampa for the weeks between January 5 and January 23, 1987. Apparently at that time, the United States District Court in the Middle District of Florida at Tampa conducted multiple voir dire and selected juries for the trials of various cases during the term on the first day of the term, thereafter notifying jurors specifically when the cases upon which they were to serve would be called. Plaintiff was called for service on January 7 [a Wednesday] and on January 21 [another Wednesday] and served on the jury on both of those days.

Plaintiff was a trusted, well-respected and well-liked produce manager of a Winn–Dixie Store near Tampa and had always had an excellent relationship with both her store manager, Mr. Fick, and her district manager, Mr. Bellerose. Pursuant to chain-wide regulations of Winn–Dixie, each department manager must inventory his or her department on Wednesday afternoon or evening between 4:00 and 8:00 p.m. and report inventory to the central office, wherein plans are made for purchases for the following week based on needs of the various stores. It is conceded that all managers understand the absolute necessity

---

1. See also *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir. en banc 1969); *Krieg v. Paul Revere Life Ins. Co.,* 718 F.2d 998, 999 (11th Cir. 1983).

2. § 1875. "(a) No employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States. (b) Any employer who violates the provisions of this section— (1) shall be liable for damages for any loss of wages or other benefits suffered by an employee by reason of such violation; (2) * * *; and (3) shall be subject to a civil penalty of not more than $1,000 for each violation as to each employee."

for the timeliness of such inventories and that these weekly inventories have priority over other duties of the various managers. Because of the importance of not running short of any item in the store, each department manager is impressed with the necessity of either conducting the inventory, arranging for some other qualified person to do so or of notifying the store manager so that he or she may arrange for someone else to conduct the inventory in a timely fashion. On January 21, 1987, Plaintiff failed to comply with this requirement; she received over her protest a written reprimand therefor; and, ultimately, she submitted her resignation for the circumstances arising therefrom. Plaintiff filed this suit, claiming a constructive discharge and $500,000.00 permanent damages pursuant to said § 1875. The jury agreed with Plaintiff that she was constructively discharged but agreed with Defendant that damages terminated upon Plaintiff's being offered and refusing adequate re-employment a few weeks after her termination. Damages were set at $1,290.00 for lost wages and $500.00 for the civil penalty pursuant to § 1875(b)(3). After some correspondence between attorneys regarding the propriety of Plaintiff's attorneys' fees being paid by the Defendant and the amount thereof, Defendant filed this Motion for Judgment Notwithstanding the Verdict along with other motions not now considered by this Court.

■ In order for the Defendant to be entitled to Judgment N.O.V., this Court must be convinced from the evidence, either that reasonable minds could not disagree that Plaintiff was not constructively discharged or that, if she was, reasonable minds could not disagree that Plaintiff's constructive discharge did not occur by reason of her "jury service or the attendance or scheduled attendance in connection with such service, * * * " in a court of the United States. This Court is of the opinion that reasonable minds could not so disagree in each instance and that Judgment N.O.V. must issue for the Defendant with its costs.

■ In order to prove a constructive discharge, Plaintiff must show that her working conditions were made so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Wardwell v. School Bd. of Palm Beach County*, 786 F.2d 1554, 1557 (11th Cir.1986). The test is what would a reasonable person have decided. It is immaterial what a given plaintiff may have decided. *Guthrie v. J.C. Penny Co.*, 803 F.2d 202, 207 (5th Cir.1986). All evidence before the Court showed that others who had suffered written reprimands did not resign and that Mr. Fick, Plaintiff's immediate supervisor as store manager who had four written reprimands and Mrs. Gordan, a fellow department manager of Plaintiff who experienced exactly Plaintiff's fate—a written reprimand which was ultimately destroyed—felt no compulsion to resign.

■ The constructive discharge must bear a causal connection to Plaintiff's jury service. If Plaintiff would have suffered the same fate as a result of the same failure to arrange her inventory irrespective of the fact of her jury service on the day in question, the constructive discharge, if any, had no causal connection with the jury service and, therefore, "did not occur by reason of her jury service".

There is no substantial difference between factual evidence presented. On January 14, 1987, the first occasion when Plaintiff served on the jury, she returned to the store and conducted the inventory and duly reported it. On Tuesday, January 20, 1987, Plaintiff called the store and, in the absence of the store manager Mr. Fick, she reported to an assistant manager of the store, Mr. Gerke, that she was required to report for jury duty the next day and that, if she were not back in the store by 5:00 p.m., she would not return. Unfortunately, she did not mention inventory, although she obviously intended that Mr. Gerke, the new assistant manager, or Mr. Fick, the manager, should know that, since inventory had to be taken after 5:00 p.m. on January 21, her message intended that, if she were not back by 5:00 p.m., Mr.

Gerke or Mr. Fick would need to arrange for the taking of inventory. Apparently, the significance of what she thought was an implied request for someone else to take the inventory if she was absent did not reach Mr. Fick at all. Mr. Gerke, apparently not sensing the implied request, simply wrote out the message to Mr. Fick as Mr. Gerke had received it and left a note informally near the telephone, thinking that Mr. Fick would receive it. Again, unfortunately, Mr. Fick never received the message at all, and, knowing that Plaintiff was a trusted employee who had on the previous Wednesday returned from jury service to take her inventory, thought little of the matter until about 6:30 p.m., when he realized that Plaintiff was nowhere in the store and that no one was taking her inventory. Thereupon, not knowing who to expect to do the inventory, he called Plaintiff's residence and learned from her husband that she had finished her jury service at about 5:00 p.m., had come to her home and had departed for the purpose of taking her son to little league baseball practice and for a trip to her hairdresser. Compared to her duties of taking inventory each Wednesday evening or of arranging for some other reliable person to do so, Plaintiff's trip to the baseball diamond and the hairdresser seemed somewhat trivial to Mr. Fick. Nonetheless, Mr. Fick put aside his other duties as manager and took and reported the inventory before 8:00 p.m. as was Plaintiff's duty.

■ Mr. Bellerose, the district manager whose duties involve a regular tour and supervision of all the stores in his district, came to the store, and Mr. Fick reported the circumstances of which he was aware to Mr. Bellerose, and again the matter of the hairdresser's appointment and the little league baseball seemed somewhat trivial as compared to Plaintiff's duty to be sure that someone was available to take her inventory. Accordingly, Mr. Bellerose concluded that Plaintiff should be reprimanded for failure to perform her duty. At some point, Mr. Bellerose wrote out a reprimand for Plaintiff as follows:

"Joanne W. Hill failed to show up from jury duty Wednesday night 1/21/87 to take her produce inventory. Mr. Fick called to talk to her husband—left message. She finally returned Mr. Fick's call at 9:15 p.m. stating that she had a hair appointment and had to take her son to baseball practice."

Upon reading this reprimand, Plaintiff insisted that her explanation be indicated on the form as follows:

"Joanne came in Tuesday p.m. Punched in 7:30 p.m. until approximately 8:45 p.m. Put an order on and told Mr. John Gerke—jury duty and if she should not be here by 5:00 p.m. Wednesday then she would not be here. He said O.K."

Bellerose specified the following course of action to correct the alleged infraction:

"Joanne will immediately run her department—Obtain fair share from profit—obtain required sales-per-man-hour or will be subject to be reduced to a stock clerk and pay reduced. This type of behavior on her part will not be tolerated."

The reprimand, including her explanation thereof, which was expected to become a part of Plaintiff's permanent record, was concluded during or after a conference between the store manager Fick, district manager Bellerose and produce manager Hill [Plaintiff] five days after the incident, during which there were several indefinite but unpleasant conversations between Plaintiff and Mr. Bellerose and perhaps Mr. Fick. During these conversations, the potential writing of the reprimand was discussed. Both Mr. Fick and Mr. Bellerose firmly indicated they felt that the reprimand was appropriate and Plaintiff firmly indicated otherwise. No one suggested that Plaintiff should be terminated—only that she receive and sign her acknowledgement of the reprimand. Suffice it to say, there were enough conversations so that ultimately both the store manager and the district manager were avoiding Plaintiff in the store and the friendly and helpful relationship that she had previously had, particularly with the store manager, had ceased. Fick and Bellerose felt the weight of having other employees know what steps they would take to enforce a store-wide policy as to department managers' duties concerning

inventories. Plaintiff was determined to keep her record free of a written reprimand when she felt she had substantially complied with the policy. When she could not do that, she quit. Plaintiff reported only two comments or actions of either Fick or Bellerose which might appear to indicate displeasure about work interruption because of Plaintiff's jury service. When she told Fick she was subpoenaed for jury service, he said, "Oh great!", and when she told Bellerose, he said something to the effect that he had been excused from jury service. Plaintiff dutifully told them she felt that she should serve and testified that she was told to come in when she could and to let Fick know when she would not be in the store. Plaintiff testified that, before she announced that she had been subpoenaed for jury duty, her relationship was always pleasant with both Fick and Bellerose but not after they chastised her for not arranging her inventory and told her that loss of business and inadequate time usage by her would not be tolerated. She admitted on cross-examination that, before her jury episode, Fick and Bellerose had counseled her about her use of time and her failure to meet the average department profit for stores in her area but explained that they had simply made suggestions as to how she might improve these facets of her service. She testified that, while her department had been below average in profits, other departments in the same store had also shown below average profits. This Court finds that the preponderance of the evidence shows that Messrs. Fick and Bellerose became more critical of Plaintiff's performance after her failure to arrange for the taking of inventory in her department. There was no evidence of this change of attitude until after she failed to arrange for the taking of the inventory. Reasonable men cannot, in this Court's opinion, disagree that Plaintiff's trouble with her store manager and her district manager began with her failure to take or arrange for the taking of the inventory before 8:00 p.m. on the evening of January 21, 1987, and it continued as a disagreement between Plaintiff and her two superiors in management at Winn–Dixie as to whether Plaintiff should receive a written reprimand therefor. Plaintiff's jury service places her in no better position to avoid such a duty than she would have been in had she not served on the jury.

Plaintiff's attorneys argue that Bellerose and Fick would not let Plaintiff explain her failure to arrange for the inventory until five days after the fact. This Court cannot agree. Plaintiff testified on direct examination that, when she returned home from the hairdresser's (after Fick had completed Plaintiff's inventory), she returned Fick's call and told him that she had told Gerke that she would be unable to come in.[3]

It is undenied that an unpleasant relationship existed after neither Plaintiff, nor anyone authorized by her, appeared on January 21 to take inventory. The Plaintiff thought that she had made arrangements to have the inventory covered; Messrs. Fick and Bellerose disagreed; and, certainly, no one appeared. All witnesses agreed upon the necessity that the inventory be made before 8:00 p.m. on every Wednesday and that Plaintiff had the specific duty to either make the inventory or arrange for someone else to make the same.[4] Plaintiff was convinced that, by having called assistant store manager Gerke and telling him that, if she were not back by 5:00 p.m., she would not be back on January 21, she had made arrangements to have the inventory covered. [See insistence thereof by Plaintiff's attorney in the Corrected Memorandum in Response to Motion for Judgment Notwithstanding the Verdict, p. 3].

**3.** She further testified that Fick's retort was, "Gee, Thanks". The Court finds that Mr. Fick was piqued by the fact that Plaintiff neither arranged for the inventory, nor notified him that she would not take inventory.

**4.** Winn–Dixie also has a policy of maintaining and comparing profit and hours expended from each department in each store as a method of encouraging more efficient work by its department heads. Deficiencies in the statistics of Plaintiff's department have been discussed before and after Plaintiff's failure to arrange the inventory.

 In any event, Plaintiff, who had worked for Winn–Dixie for 14 years and had never before received a written reprimand or been evaded by either her store manager or her district manager, was deeply shocked by the whole occasion and tendered her resignation with two weeks notice. She claimed and the jury found a constructive discharge. She worked out the two weeks notice and, even though asked to reconsider and even though offered a job which the jury determined was a reasonably equivalent job wherein she would not be associated with Mr. Fick or Mr. Bellerose, she refused re-employment upon termination of her job and insisted that she was constructively discharged. The jury agreed that Plaintiff was constructively discharged in special findings of fact but disagreed with the Plaintiff that she should not have accepted re-employment in a different location with different personnel. This Court, however, does not agree that Plaintiff's notifying Mr. Gerke that if she were not back by 5:00 p.m. on January 21 that she would not return would necessarily convey the request that someone else should take her inventory. Although it is understandable that that report contained what Plaintiff considered an implied request to Mr. Fick to have someone else conduct her inventory, it is also understandable that she could have simply been saying she would not personally be in but that otherwise she had arranged her affairs. Mr. Gerke was busy with his own affairs as assistant manager of the store in the manager's temporary absence, and he attempted to convey her message in the note to Mr. Fick, in the words she admittedly used. Mr. Gerke did not say that Plaintiff had not secured anyone else to conduct the inventory; he did not state that Plaintiff asked Mr. Fick to please have someone else conduct her inventory; and it is obvious that Plaintiff never specifically asked anyone to conduct the inventory for her.[5] Mr. Fick and Mr. Bellerose saw what indicated to them an employee's neglect to perform an explicit and important duty.

Thereupon, they determined that such neglect merited a written reprimand. Plaintiff, thinking that she had substantially complied, was outraged and refused to agree to the propriety of the reprimand or to sign the same until her explanation was typed thereon. An employer may discipline or threaten to discharge an employee for any reason—even a reason based on erroneous conclusions or facts as long as the action is not for an unlawful reason. *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984); *Furnco Const. Corp. v. Water,* 438 U.S. 567, 577–78, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978). The jury may well have felt that the written reprimand in Plaintiff's record was too harsh in view of her long otherwise excellent record or they may have concluded that Winn–Dixie's generous offers of re-employment and destruction of the reprimand indicated a sense of guilt rather than a reluctance to lose what everyone agreed had been an excellent well-trained junior management employee. Reasonable men could not, in the opinion of this Court, have concluded that Plaintiff was reprimanded for any reason other than her failure to arrange for someone to take her inventory, although she was cautioned to do her job and meet requirements.

 By agreement with and cooperation of counsel, the Court calculated the amount of money supposedly lost by Plaintiff between the date of tendering of her resignation and the date that she was found to have wrongfully refused re-employment as $1,290.00, added a fine of $500.00 for the Juror Protection Act and entered a judgment in favor of Plaintiff against Defendant Winn–Dixie for the sum of $1,790.00 on the jury verdict. If those calculations, assessment of the fine for Plaintiff's benefit, or the determination of the term for which back pay would be due if the jury should find a constructive discharge is error, this Court is of the opinion that counsel stipulated thereto and are estopped to question the same. Neverthe-

---

**5.** Perhaps, had Mr. Fick received the ambiguous message by which Plaintiff thought she implied a request for him to have someone else conduct her inventory, Mr. Fick would have realized that Plaintiff was implying such a request and complied, but Mr. Fick never received the message.

less, reasonable minds could not disagree with the fact that Plaintiff was not constructively discharged.

For the reasons set out hereinabove, Defendant's Motion for Judgment Notwithstanding the Verdict will be granted with costs taxed against the Plaintiff. An Order and Judgment will be entered in accordance with this Opinion.