Joanne W. HILL, Plaintiff–Appellant,

v.

**WINN–DIXIE STORES, INC.,**
**Defendant–Appellee.**

Nos. 89–3719, 90–3510.

United States Court of Appeals,
Eleventh Circuit.

July 10, 1991.

---

**4.** Due to this result, we need not reach RTC's          other arguments.

Before ANDERSON and CLARK, Circuit Judges, and TUTTLE, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Appellant Joanne W. Hill seeks reversal of two orders: an order granting a judgment notwithstanding the verdict and, in the alternative, an order granting a new trial if the judgment notwithstanding the verdict is reversed on appeal. Hill filed a complaint in district court against appellee Winn–Dixie Stores, Inc. ("Winn–Dixie"), seeking damages for violation of the Jury System Improvements Act of 1978, 28 U.S.C. § 1875 (1986) (the "Jury Act").

At the conclusion of the evidence at trial, the jury found, by special verdict, that Winn–Dixie's actions toward Hill had violated the Jury Act. The jury assessed a civil penalty against Winn–Dixie in the amount of $500.00, pursuant to the Jury Act, but declined to award Hill front pay, finding that Hill had unreasonably refused Winn–Dixie's offer of reinstatement. The district court overturned the jury verdicts regarding Winn–Dixie's liability under the Jury Act and entered judgment in favor of Winn–Dixie on all counts, taxing costs against Hill.

## I. FACTS

Winn–Dixie employed Joanne Hill for approximately fourteen years. Hill served as produce manager for 2½ years prior to leaving the company, the last 1½ years at Store 605. Pursuant to company regulations, Hill, as produce manager, was responsible for, *inter alia*, taking inventory of the produce department between 4:00 and 8:00 P.M. every Wednesday and reporting inventory to the central office.

In early December, 1986, the United States District Court in the Middle District of Florida at Tampa notified Hill that she would be serving jury duty in January.[1]

Robert V. Williams, Joryn Jenkins, Taub & Williams, P.A., Tampa, Fla., for plaintiff-appellant.

Peter W. Zinober, Joan Young, Zinober & Burr, Adrien Fechter, Tampa, Fla., for defendant-appellee.

1. Apparently, the district court in Tampa directed Hill to be available during the month of

At that time, Hill alerted Gordon Fick, the manager of Store 605, that she would be serving jury duty for the month of January. Fick responded with the comment, "Oh, great." Hill arranged with Fick that she would call the store and notify whoever was in charge of the store when she received notice to serve the following day. Hill also notified Lawrence Bellerose, supervisor of several Winn–Dixie stores, including Store 605, of her jury duty in January, informing him of the arrangements she made with Fick in the event she was called to serve on a jury. Bellerose told Hill that when he was served a jury duty notice, he "got out of it."

Hill appeared for jury duty on Wednesday, January 7, 1987, but she was not selected to serve on a jury. She returned to work at approximately 3:00 that afternoon. At 5:00 P.M. on that same day, Hill discovered that Fick was drafting a new work schedule for her around the hours of the day when she might be called in for jury duty. After Hill protested to Fick and Bellerose, Fick destroyed the schedule.

On the afternoon of January 20, Hill learned that she would have to report for jury duty the following day, Wednesday, January 21. Hill came to work at approximately 7:30 on Tuesday evening to prepare for her absence on Wednesday.[2] Because Fick was not on duty Tuesday evening, Hill notified John Gerke, the assistant store manager, that she would be absent the next day for jury duty. She told Gerke that if she were not back in the store by 5:00 P.M. on Wednesday, then she would not come in to work that day. Hill testified that she specifically requested coverage for

her inventory duty.[3] Gerke responded that he would leave a note for Fick. However, Fick never received the note.

On Wednesday, January 21, Hill reported for jury duty and was selected to serve that day. She was excused from jury duty at 5:00 P.M. Upon returning home at approximately 6:15 P.M., Hill left to take her son to a baseball game and to meet a hair appointment. Meanwhile, not having received any explanation for Hill's absence from work that day, Fick called Hill's house on Wednesday evening. When Hill returned Fick's call at approximately 9:00 P.M., Hill informed Fick that she had been selected to serve on a jury that day and would be absent from work again the following day for the same reason. She also told Fick that Gerke had left him a note regarding her absence. Fick was upset. Upon exiting his office to do the produce inventory himself, Fick told one of Hill's subordinates that Bellerose was going to "get" Hill.

Hill served on a jury until 5:00 P.M. on Thursday and thereafter telephoned the store, informing Fick that she would have to report for jury duty again the next day. On Friday, Hill served on a jury until 4:00 P.M., at which time she was excused. Hill worked her regular hours at Winn–Dixie on Saturday, January 24, without incident.

On Monday, January 26, Fick summoned Hill to meet with him and Bellerose. Bellerose read to Hill a written reprimand in the form of a "personnel action form," regarding the events surrounding her jury duty.[4] The reprimand also threatened to reduce Hill's position to that of a stock clerk if she did not obtain fair-share profit sales per

January for jury service, although she would not necessarily serve for the duration of that month. As of January 2, 1987, Hill was to telephone the court each day after 5:00 P.M. to find out whether her number was on the list of jurors to be called the next day.

2. Hill testified that she made her schedule for the following week, addressed matters that were due on Thursday, and notified an assistant that he needed to be at work on Wednesday at 6:00 A.M. rather than his usual hour later in the morning because she would be serving jury duty, leaving a note with directions regarding Wednesday's duties.

3. Winn–Dixie contested this finding at trial, relying on Gerke's testimony that he did not recall any conversation with Hill regarding inventory. However, we resolve such factual conflicts in favor of the party opposed to the motion for judgment notwithstanding the verdict. *See Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir.1989).

4. Hill testified that after an employee has been issued three of these reprimands, Winn–Dixie can dismiss him at any time.

man-hour.[5] Hill requested that Bellerose write her version of the past week's events on the top of the form.[6] Hill explained to Fick and Bellerose that she had informed Gerke of her jury service on January 21, and they telephoned Gerke, who verified Hill's story. On January 29 and 31, Hill asked Bellerose whether he planned to file the action report, and he responded affirmatively. Bellerose told Hill that Harry Stewart, Winn–Dixie's district supervisor and Bellerose's superior, had also signed the report.

After January 21, the date on which Hill served jury duty, Bellerose and Fick began criticizing Hill regarding her job performance and the ratio of sales per man-hour of her department, as they had not done prior to that date.[7] Specifically, on Friday morning, January 29, Fick questioned the number of hours used by the produce department on the previous day, stating that Bellerose was upset and had telephoned him to complain about them. Hill explained that the delivery truck was late that day, that Bellerose had been present and should have known that fact, and that she could compensate by minimizing her hours during the remaining days of the pay period. On Wednesday, February 4, Fick and Bellerose again approached Hill regarding the low sales per man-hour ratio of her department. Additionally, after January 21, Fick no longer helped to improve the sales per man-hour ratio of the produce department as he had customarily done prior to that date.[8]

On Thursday morning, February 5, 1987, Hill submitted a two-week notice of resignation to Fick. That same day, Hill called the vice-president of human resources at Winn–Dixie's corporate headquarters to explain her reasons for resigning. The following day, Hill had a similar conversation with the regional supervisor, Stewart's immediate superior, and he promised Hill that he would "look into it."

On Saturday, February 7, Stewart offered Hill a lesser-paying position at another store under a different manager and supervisor as an alternative to her current job.[9] Bellerose tore up the action report pursuant to direction from his superiors on the following Friday. He encouraged Hill to continue employment with Winn–Dixie either in her current capacity, promising no reprisal from him, or in a different store with a different supervisor. However, responding to Hill's inquiry regarding his opinion of the events that had transpired, Bellerose stated that he still felt he had correctly handled the situation. Hill did not withdraw her resignation, and she ter-

---

5. Bellerose completed the reprimand form as follows:

> Joanne W. Hill failed to show up from jury duty Wednesday night, 1/21/87, to take her produce inventory. Mr. Fick called to talk to her husband, left message. She finally returned Mr. Fick's call at 9:15 P.M., stating that she had a hair appointment and had to take her son to baseball practice.
> Mrs. Hill showed a complete disregard for her position as produce manager, no sense of urgency or responsibility.
> Has associate been verbally counseled with on this matter previously? Not by me.
> Is this the first associate action written on this matter? Yes, by me.
> Course of action to be taken to correct infraction? Joanne will immediately run her department, obtain fair share from profit, obtain sales per required sales per man hour, or will be subject to be reduced to a stock clerk and pay reduced. This type of behavior on her part will not be tolerated.

R5–67. This document was signed by Bellerose, Fick, and Hill.

6. Bellerose wrote out the following statement by Hill:

> Joanne came in Tuesday P.M., punched in at 7:30 P.M., until approximately 8:45 P.M. Put an order on, and told Mr. John Gerke, "Jury duty," and if she should not be here by 5:00 P.M. Wednesday, then she would not be here. He said, "Okay."

R5–66.

7. Bellerose testified that various department managers, including Hill, had a low sales-per-man-hour ratio. However, he admitted that certain departments customarily used more hours than others.

8. Apparently, Fick would often work in the produce department or direct another employee to do so in an effort to increase that department's sales per man-hour.

9. Stewart testified that he informed Hill at this meeting that the action report against her would be destroyed.

minated her employment with Winn–Dixie on Tuesday, February 17, 1987.

## II. PROCEEDINGS BELOW

On January 26, 1988, Hill filed the present action, alleging coercion, intimidation, harassment and constructive discharge by Winn–Dixie in violation of 28 U.S.C. § 1875 [10] and Fla.Stat. § 40.271.[11] Among other interlocutory rulings, the district court denied Winn–Dixie's motion to strike Hill's request for a jury trial. *Hill v. Winn–Dixie*, No. 88–91–CIV–T–13A, 1988 WL 151723 (October 12, 1988) (Carr, J.). The court found that although neither the language nor the legislative history of the Jury Act indicates congressional intent to provide the right to trial by jury under that statute, the instant suit fell within the category of suits addressed by the Seventh Amendment, which preserves the right to a jury trial in suits at common law, because § 1875 creates legal remedies. *Id.* at 9.[12] Thus, the court held that "[w]hile the equitable power to enjoin the offender and reinstate the offended will remain with the court, the question of whether to award back wages and to impose civil penalties must be tried to a jury." *Id.* at 10.

On April 20, 1989, the jury rendered a special verdict, finding that Winn–Dixie "threaten[ed] to fire or otherwise coerce or intimidate the plaintiff Joanne W. Hill be-cause of her service or in connection with a federal jury" and that "in response to the plaintiff's federal jury service, [Winn–Dixie] made the plaintiff's working conditions so difficult or unpleasant that a reasonable person in her position would have felt compelled to resign." However, the jury found that Hill was unreasonable in rejecting Winn–Dixie's offers of reinstatement, and, accordingly, denied Hill an award of front pay, *i.e.* wages lost after the date of Winn–Dixie's offers of reinstatement.[13] Pursuant to the jury verdict and a stipulation from the parties, the district court set damages in the amount of $1,290.00 for "lost back wages between the time Plaintiff stopped receiving her wages and the time she unreasonably refused to accept reinstatement." *Hill v. Winn–Dixie*, No. 88–91–CIV–T–13A (May 2, 1989) (Varner, J.). The jury also awarded Hill a $500 civil penalty under 28 U.S.C. § 1875(b)(3).

Upon Winn–Dixie's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, the district court issued two orders. The first order granted judgment notwithstanding the verdict in favor of Winn–Dixie, with costs taxed against Hill. *Hill v. Winn–Dixie*, 721 F.Supp. 1226 (M.D.Fla.1989). The court concluded that Hill failed to "comply with [the] requirement" that she, as a depart-

---

**10.** This statute provides, in relevant part:

(a) No employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States.
(b) Any employer who violates the provisions of this section—
(1) shall be liable for damages for any loss of wages or other benefits suffered by an employee by reason of such violation;
(2) may be enjoined from further violations of this section and ordered to provide other appropriate relief, including but not limited to the reinstatement of any employee discharged by reason of his jury service; and
(3) shall be subject to a civil penalty of not more than $1,000 for each violation as to each employee.
(d)(2) ... The court may tax a defendant employer, as costs payable to the court, the attorney fees and expenses incurred on behalf of a prevailing employee, where such costs were expended by the court pursuant to paragraph (1) of this subsection. The court may award a prevailing employer a reasonable attorney's fee as part of the costs only if the court finds that the action is frivolous, vexatious, or brought in bad faith.

**11.** The district court dismissed Hill's claim under the Florida statute, finding that the Florida legislature did not intend § 40.271 to apply to federal jurors. *See Hill v. Winn–Dixie*, 699 F.Supp. 876 (M.D.Fla.1988). Hill does not contest this dismissal on appeal.

**12.** In arriving at this conclusion, the district court compared the remedy provisions of § 1875 with those of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.*.

**13.** Hill does not appeal from this portion of the judgment.

ment manager, must either conduct the inventory, arrange for some other qualified person to do so, or notify the store manager so that he or she may arrange for someone else to conduct the inventory in a timely fashion. *Id.* at 1229. Consequently, the court held that "reasonable men could not ... have concluded that Plaintiff was reprimanded for any reason other than her failure to arrange for someone to take her inventory, although she was cautioned to do her job and meet requirements." *Id.* at 1232. The court also found that "reasonable minds could not disagree with the fact that Plaintiff was not constructively discharged." *Id.*

Subsequently, the district court issued a second order granting a new trial in the event that this court overturns the judgment notwithstanding the verdict rulings. *Hill v. Winn–Dixie,* No. 88–91–CIV–T–13A, 1990 WL 126471 (May 11, 1990). The court found that a new trial was warranted on the grounds that the jury's special verdicts in favor of Hill were contrary to the great weight of the evidence, *id.* at 2–3, and that the court had made an error in the jury instruction that was not harmless, *id.* at 5–8.[14] Finally, in an alternative holding, the court concluded that it could disregard the jury verdict because actions pursuant to the Jury Act were not entitled to jury consideration. *Id.* at 3–5.[15] Hill appeals from both orders.

## III. ANALYSIS

On appeal, Hill contends that the district court erred in overturning the jury verdict that Winn–Dixie both discriminated against and constructively discharged her in violation of the Jury Act. As a preliminary matter, Hill argues that the district court failed to accord the jury verdict due deference because the court held that she had no right to a jury trial under 28 U.S.C. § 1875. In the event that the district court's judgment notwithstanding the verdict rulings are reversed on appeal, Hill contends that the district court abused its discretion in granting a conditional new trial because the jury verdicts were not contrary to the weight of the evidence. Because the right to a jury trial affects the standard by which we review the district court's ruling, we will first address the issue of the right to a jury trial pursuant to 28 U.S.C. § 1875.

### A. *Right to Jury Trial*

We conclude that the Jury Act provided Hill with a right to a jury trial under the Seventh Amendment to the United States Constitution.[16] The Seventh Amendment preserves the right to a jury trial "in suits at common law," and, in particular, where a "statute creates legal rights and remedies, enforceable in an action for damages." *Curtis v. Loether,* 415 U.S. 189, 195, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974). "To determine whether a particular action will resolve legal rights, the Court must examine both the nature of the issues

**14.** The district court had charged the jury that for Hill to prevail on the issue of liability under the Jury Act, Hill must prove that her jury service was a factor in Winn–Dixie's decisions concerning her employment. *Id.* at 6. However, the court found that it erred in omitting from the jury instructions the words "substantial, motivating, or determining" as modifying "factor" and that this omission "was not duly excepted to or cured by other instructions given the jury." *Id.* Therefore, the court concluded that its charge was in error and that "it was not highly probable that such an error did not affect the outcome of the case under the evidence submitted to the jury." *Id.* at 8.

**15.** Therefore, the court also held, contrary to Judge Carr's interlocutory order for a jury trial, that if the case were remanded for a new trial, the issues under the Jury Act should be litigated

without a jury. The court conceded that the issue regarding front pay, *i.e.,* wages accruing after the dates of Winn–Dixie's offers of reinstatement, may have warranted submission to the jury. However, because the jury had returned a verdict denying front pay with which the court agreed, the court concluded that front pay would not be re-litigated if this court remanded the case for a new trial. *Id.* at 5.

**16.** We do not address the unsettled question of whether the legislative history of the Jury Act creates the right to trial by jury in light of our holding that such a right exists under the Seventh Amendment and because Hill does not argue that issue on appeal. *Compare Juror 157 v. Corporate Defendant,* 710 F.Supp. 324, 325–26 (M.D.Fla.1989) *with Carter v. Citibank,* 649 F.Supp. 19, 20–21 (E.D.N.Y.1986).

involved and the remedy sought." *Local No. 391 v. Terry*, 494 U.S. 558, ——, 110 S.Ct. 1339, 1345, 108 L.Ed.2d 519 (1990).

In examining the nature of the issues involved in the instant case, "we must ... look for an analogous cause of action that existed in the 18th century to determine whether the nature of this duty ... is legal or equitable." *Id.* We find that an action pursuant to the Jury Act may be analogous to the following 18th century actions commonly entertained by courts of law: an action in tort to redress discrimination, *see Curtis*, 415 U.S. at 196 n. 11, 94 S.Ct. at 1009 n. 11 ("An action to redress ... discrimination may also be likened to an action for defamation or intentional infliction of emotional distress"), an action in debt to recover civil penalties, *see Juror 15'' v. Corporate Defendant*, 710 F.Supp. 324, 328 (M.D.Fla.1989) (citing *Tull v. United States*, 481 U.S. 412, 418–19, 107 S.Ct. 1831, 1836, 95 L.Ed.2d 365 (1987)), and an action for special assumpsit or breach of contract where the terms of § 1875 are considered to be incorporated into the employment contract, *see Juror 157*, 710 F.Supp. at 328; *see also Rogers v. Exxon Research & Engineering Corporation*, 550 F.2d 834 (3rd Cir.1977) (holding that "[t]he fact that the right to recover wages is granted not by common law but by statute does not change the essential nature of" [a suit under the Age Discrimination Act] which is, in essence, a "routine contract action where the parties would be entitled to a jury under the Seventh Amendment").

However, because the Supreme Court has stated that "characterizing the relief sought is '[m]ore important' than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury trial," *Tull*, 481 U.S. at 421, 107 S.Ct. at 1837, we focus on the remedy provisions of the Jury Act. *See Terry*, 494 U.S. at ——, 110 S.Ct. at 1345.[17] Section 1875(b) of Title 28, United

States Code, provides three relief provisions: (1) mandatory damages for loss of wages or other benefits; (2) discretionary injunction from further Jury Act violations and reinstatement; and (3) mandatory civil penalty. Injunction and reinstatement are clearly forms of equitable relief. However, because the Supreme Court has declined to hold that any award of monetary relief must necessarily be legal relief, *Curtis*, 415 U.S. at 196, 94 S.Ct. at 1009, the first and third remedy provisions, *i.e.* back wages and civil penalty, require some discussion.

In *Curtis*, the Court held that a damages action under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.*, is entitled to a jury trial under the Seventh Amendment because "the relief sought here—actual and punitive damages—is the traditional form of relief offered in the courts of law." *Curtis*, 415 U.S. at 196, 94 S.Ct. at 1009. We agree with the district court, *Hill v. Winn–Dixie*, No. 88–91–CIV–T–13(A), 1988 WL 151723 (October 12, 1988) (Carr, J.), that the relief provisions of the Jury Act are similar to those of Title VIII. Section 3612(c) of Title VIII states in relevant part:

> The court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual damages and not more that $1,000 punitive damages, together with court costs and reasonable attorney fees in the case of a prevailing plaintiff....

In particular, Title VIII's award of punitive damages and the Jury Act's civil penalty provision serve the same function of placing the victim in a position superior to that in which he found himself prior to the statutory violations.

■ In *Tull*, the Supreme Court held that the civil penalty provision in the Clean

---

**17.** Even if the instant action is also analogous to an 18th century action in equity, thereby "leav[ing] us in equipoise as to whether [the

parties] are entitled to a jury trial," we still must turn to the second part of the Seventh Amend-

Water Act, 33 U.S.C. § 1251 *et al.*,[18] was legal in character and therefore created the right to a jury trial. "A civil penalty was a type of remedy at common law that could only be enforced in courts of law." *Tull*, 481 U.S. at 422, 107 S.Ct. at 1838. The Court in *Tull* also found that the drafters of the Clean Water Act intended the courts to consider "retribution and deterrence, in addition to restitution, when [they] imposed civil penalties." *Id.* Similarly, by creating the remedy of a civil penalty, the drafters of the Jury Act clearly intended not only to compensate the wronged employee but also to deter wrongful action by the employer. *See* H.R.Rep. No. 1652, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5477, 5488 ("The committee finds that this civil penalty provision is appropriate, not merely as a deterrent to employer misconduct, but also in recognition that the duty imposed upon employers by this section runs not only to the employee but even more importantly to the United States and its citizens in protecting the judicial process and the right to trial by jury."). On the authority of *Curtis* and *Tull*, we hold that the civil penalty provision of the Jury Act is legal.

■ We also conclude that the provision for back wages in § 1875 is of a legal rather than an equitable nature. Under the Jury Act, an award of back wages is not within the discretion of the court; rather, once an employer is found liable under the Jury Act, the remedy of back wages is mandatory. *See* 28 U.S.C. § 1875(b)(1).[19] Courts have characterized a discretionary award of back wages as equitable. *See, e.g., Albemarle Paper Company v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550 (11th Cir.1988). However, a

mandatory award of back wages is legal. *See Curtis*, 94 S.Ct. at 1010 (finding that the back pay provision of Title VIII cannot be characterized as equitable relief, relying in part on its mandatory language); *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834, 839 n. 6 (3rd Cir.1977). *See also Carter v. Citibank*, 649 F.Supp. 19 (E.D.N.Y.1986) ("[M]ost courts hold that Title VII actions are not triable to a jury because the statute placed the availability of back pay within the equitable discretion of the court. *See Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 374–75 & n. 19, 99 S.Ct. 2345, 2350 & n. 19 [60 L.Ed.2d 957] (1979)").

Furthermore, the back wages remedy "has none of the attributes that must be present before we will find an exception to the general rule and characterize damages as equitable:" it is neither "restitutionary, such as in 'action[s] for disgorgement of improper profits,' "[20] nor "incidental to or intertwined with injunctive relief." *Terry*, 494 U.S. at ——, 110 S.Ct. at 1348 (citing *Tull*, 481 U.S. at 424, 107 S.Ct. at 1839). In particular, § 1875(b) separately authorizes injunctive relief and civil damages in distinct statutory provisions. Thus, if a "legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact. The right cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought." *Tull*, 481 U.S. at 424, 107 S.Ct. at 1839 (citing *Curtis v. Loether*, 415 U.S. at 196 n. 11, 94 S.Ct. at 1009 n. 11).

Because we construe the first and third remedy provisions of § 1875, *i.e.* back wages and civil penalty, as legal rather than equitable, we conclude that Hill was entitled to a jury trial under the Seventh

---

ment analysis for a resolution of the issue. *Terry*, 494 U.S. at ——, 110 S.Ct. at 1347.

**18.** "Section 1319 enumerates the remedies available under the Clean Water Act. Subsection (b) authorizes relief in the form of temporary or permanent injunctions. Subsection (d) provides that violators of certain sections of the Act 'shall be subject to a civil penalty not to exceed $10,-000 per day' during the period of the violation." *Tull*, 481 U.S. at 414, 107 S.Ct. at 1834.

**19.** The mandatory language of the statute with respect to back wages ("shall be liable for damages for any loss of wages") contrasts with the discretionary language with respect to equitable relief ("may be enjoined").

**20.** Even if we were to construe the back wages sought as restitutionary, we still find that they are a legal remedy in the instant case in light of the other reasons stated.

Amendment regarding her Jury Act claims.[21] In light of our holding that Hill was entitled to a jury trial, we reject the district court's alternative holding that characterized the jury verdict as advisory.

### B. Judgment Notwithstanding the Verdict

■ Having established that Hill was entitled to a jury trial, we turn next to Hill's argument that the district court erred in granting the judgment notwithstanding the verdict. We review the district court's judgment notwithstanding the verdict under the same standard applied by the district court. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989); *Miles v. Tennessee River Pulp and Paper Co.*, 862 F.2d 1525, 1528 (11th Cir.1989). This court has held that reviewing courts should:

> consider all of the evidence ... in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of [a motion for judgment notwithstanding the

verdict] is proper. On the other hand, if there is substantial evidence opposed to the motion[ ], that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion[ ] should be denied. . . .

*Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir.1989) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969)).[22]

■ We find that the evidence in this case is sufficient to enable a reasonable jury to conclude that Winn–Dixie coerced or intimidated Hill in violation of 28 U.S.C. § 1875. Fick and Bellerose made statements to Hill regarding her jury service from which a reasonable jury could have inferred their hostility toward jury service. Hill informed her superiors well in advance of the month of January that she would be called to jury duty sometime in January, and she arranged to notify the "man in charge" of the store when she learned that she was to report for jury duty. She complied with this arrangement by notifying Gerke, the most senior manager on duty at Store 605, when she was called on January 20 to report for jury duty on the next day.[23] In light of these actions by Hill, a reason-

---

21. *See also Juror 157 v. Corporate Defendant*, 710 F.Supp. 324 (M.D.Fla.1989) (finding that the Seventh Amendment authorizes the right to a jury trial for claims under 28 U.S.C. § 1875); *Carter v. Citibank*, 649 F.Supp. 19, 21 (E.D.N.Y. 1986) (same). In addition, "[o]ther courts have apparently found a right to trial by jury in 28 U.S.C. § 1875 claims without specifically stating that conclusion. *See Shea v. County of Rockland*, 810 F.2d 27 (2d Cir.1987); *Segal v. Gilbert Color Systems, Inc.*, 746 F.2d 78 (1st Cir.1984)." *Juror 157*, 710 F.Supp. at 327 n. 6.

The district court, in its alternative holding, *Hill v. Winn–Dixie*, No. 88–91–CIV–T–13(A) at 3–5, 1990 WL 126471 (May 11, 1990), apparently assumed that the Jury Act remedy provisions are sufficiently analogous to the remedy provision in Title VII to justify adopting this court's position in Title VII cases, *i.e.*, no right to a jury trial. *See Wilson v. City of Aliceville*, 779 F.2d 631 (11th Cir.1986); *Sullivan v. School Bd. of Pinellas County*, 773 F.2d 1182 (11th Cir.1985). Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(g) states in relevant part:

> [T]he court may enjoin the respondent from engaging in such unlawful employment prac-

tice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate.

We disagree with the district court's characterization, finding the Jury Act remedy provisions more similar to those in Title VIII. *See also Curtis*, 415 U.S. at 196–97, 94 S.Ct. at 1009–10 (distinguishing between the remedy provisions of Title VIII and Title VII).

22. Fifth circuit cases decided prior to the close of business on September 30, 1981, are binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

23. We reject Winn–Dixie's argument, which was accepted by the district court, that Hill violated Winn–Dixie's rules. Hill literally complied with the arrangements she had made with Winn–Dixie, *i.e.*, she notified the "man in charge" on the evening of January 20, Gerke, of her impending jury service. At that point, we find that she had fulfilled her duty to Winn–Dixie per the parties' agreement.

able jury could have concluded that the reactions by Hill's superiors to her call to jury duty—Fick's prolonged anger, even after Hill explained to him the reason for her absence and that she had notified Gerke, and the ongoing reprimands by Hill's superiors subsequent to the events of January 21—were evidence of intimidation or coercion by Winn–Dixie that was "by reason of" her jury service. 28 U.S.C. § 1875(a). Therefore, we reverse the district court's judgment notwithstanding the verdict and reinstate the jury verdict finding that Winn–Dixie coerced or intimidated Hill in violation of the Jury Act.

■ However, we find that the evidence in this case is insufficient to enable a reasonable jury to conclude that Winn–Dixie constructively discharged Hill in violation of § 1875. "The law in this circuit with respect to constructive discharge is well-established. To show constructive discharge, the employee must prove that his working conditions were so difficult or unpleasant that a reasonable person would have felt compelled to resign." *Wardwell v. School Bd. of Palm Beach County, Florida*, 786 F.2d 1554, 1557 (11th Cir.1986). *See Young v. Southwestern Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir.1975). Before finding a constructive discharge, this court has traditionally required a high degree of deterioration in an employee's working conditions, approaching the level of "intolerable." *Wardwell*, 786 F.2d at 1558 (holding that an employer's failure to promote and consequent embarrassment to employee, together with employee's added workload, "simply do not rise to the intolerable level at which a reasonable person would feel compelled to resign"). *See Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir.1989); *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 905 (11th Cir.1988); *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 65 (5th Cir.1980); *Calcote v. Texas Educ. Found.*,

578 F.2d 95, 97 (5th Cir.1978); *Young*, 509 F.2d at 144.

Under this standard, we find that the formal written reprimand by Fick and Bellerose, the criticism by Hill's supervisors in the few weeks following her jury service, and the withdrawal of Fick's customary support of the produce department did not create intolerable working conditions that would compel a reasonable person to resign, especially in light of the short duration of time within which these events occurred and in light of Winn–Dixie's attempts to rectify the situation with Hill in the two weeks following the submission of her resignation.[24] Therefore, we affirm the district court's judgment notwithstanding the verdict that Winn–Dixie did not constructively discharge Hill in violation of the Jury Act.

Because we affirm the district court's judgment notwithstanding the verdict on the second issue, constructive discharge, we need only address the district court's grant of a conditional new trial with respect to our reversal of the judgment notwithstanding the verdict on the first issue, coercion and intimidation under the Jury Act. On appeal, Hill contests the district court's determination that the jury verdict was contrary to the weight of the evidence. Our reasons for reversing the judgment notwithstanding the verdict on the first issue also support our conclusion that the jury verdict regarding coercion and intimidation under the Jury Act was not contrary to the weight of the evidence.

■ The district court also offered a second reason for granting a conditional new trial. The court charged the jury that to prevail on the issue of liability, Hill must prove that her jury service was a factor, instead of a substantial, determining or motivating factor, in Winn–Dixie's actions. The court found that this omission was an error in the jury instructions that was not

24. We reject Hill's comparison of the facts of this case with those in *Calcote v. Texas Educ. Found.*, 578 F.2d 95 (5th Cir.1978), where our predecessor circuit found constructive discharge. In addition to an unwarranted deficiency report, the employee in *Calcote* was the subject of disparate treatment regarding starting salary and merit pay increase and experienced harassment by his supervisor over the course of a three-month period. The facts in the instant case are readily distinguishable.

harmless. We disagree. Considering the jury instructions, the special verdict, and the record as a whole, we find that the jury concluded that the cause of Winn–Dixie's discrimination was Hill's jury service. There is strong evidence of this and very little evidence that anything else could have motivated Winn–Dixie's actions. Therefore, we reject the district court's holding that there was reversible error in the jury instruction; we reverse the district court's alternative grant of a new trial.

For the foregoing reasons, we reverse the district court's judgment notwithstanding the verdict and reinstate the jury verdict that Winn–Dixie coerced and intimidated Hill by reason of her jury service. We also reverse the district court's grant of a conditional new trial. However, we affirm the district court's judgment notwithstanding the verdict that there was no constructive discharge, and we therefore deny relief for lost back wages. In light of our reversal on the first issue, we reinstate the $500.00 civil penalty against Winn–Dixie.

AFFIRMED in part, REVERSED in part.