**Terry STONE, Plaintiff,**

v.

**GEORGIA POWER CO., Defendant.**

**No. 5:94–cv–144–2 (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Oct. 2, 1995.

---

Matthew W. Wallace, Savannah, GA, for Terry Stone.

Stephen W. Riddell, Teri Plummer McClure, Atlanta, GA, for Georgia Power Company.

## ORDER

OWENS, District Judge.

Before the court is defendant's motion for summary judgment. Plaintiff's complaint alleges employment discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 to 634, along with a pendent state claim for intentional infliction of emotional distress. Defendant claims that one of three grounds entitles it to judgment under the Rule 56 standard, and that two other grounds have a similar effect on plaintiff's pendent state claim. After careful consideration of the arguments of counsel, the relevant caselaw, and the record as a whole, the court issues the following order.

## I. FACTS

After plaintiff graduated from high school in 1968, he served in the Army until 1974, when he was honorably discharged. For the next two years, he attended a community college studying business administration, but did not receive a degree. Around June 1980, plaintiff went to work for defendant Georgia Power Company ("GPC") as an assistant warehouseman. From that position plaintiff worked his way to junior inspector in the mechanical department, eventually attaining the status of senior inspector at Plant Shearer. After a layoff period, plaintiff was promoted to lead the x-ray department of the technical services group.

Plaintiff then transferred around June 1991 to Plant Yates, where he assumed the position of maintenance planner. When plaintiff arrived at Yates, he bought a home. The employment verification form that the mortgage company sent GPC contained a standard question about future employment prospects. The response was "good".

Plaintiff accepted the Yates transfer offer as an alternative to being moved with the technical services group to Atlanta in a restructuring move, notwithstanding that in doing so he was voluntarily accepting a $20,000 reduction in pay. He was told that the position was made available for him at Yates because GPC did not want to lose the experience of people like him, and that GPC would need people like plaintiff down the line. Two other inspectors transferred from Shearer to Yates with plaintiff to assume maintenance planner positions: Mike Babb (age 32) and Bobby Adams (age 42). Plant Yates is divided into two units, old and new. At the old unit, Babb and plaintiff reported directly to Allen Smith, who in turn reported to Steve Lee. In the new unit, Bobby Adams reported to Mike Hudson, who in turn reported to David Thornton.

Plaintiff heard the first rumblings in October 1991 that Plant Yates was to experience layoffs. Steve Lee and other managers at Yates were charged with the responsibility of identifying nonessential positions as part of a reduction in force ("RIF") plan. One of Plant Yates' contribution to the RIF plan had been the elimination of one of its "specialist" positions. However, to determine which person would be terminated as a specialist, defendant conducted a company-wide evaluation of specialists. If it so happened that GPC's lowest ranked specialist worked at a different plant, then a specialist from Yates would be given the chance to transfer to that vacant spot; but on the whole, there would be one less specialist at Yates, and thus one less specialist company-wide.

■ Eight or nine specialists were to be rated at Plant Yates. Plaintiff and Babb had the same rater, Allen Smith. Smith had his ratings reviewed by Steve Lee. Lee would require a written justification if Smith submitted an extreme critique of an employee. Lee endorsed Smith's review of plaintiff once he and Smith had discussed it. At this time, Lee claims not to have been aware of either Babb's or plaintiff's ages. (Defendant's Facts, at ¶ 13). However, Lee also claims to have had the opportunity to review plaintiff's work and oversee his performance. (Defendant's Facts, at ¶ 16).[1]

According to defendant's submissions, Babb and plaintiff were tied after the initial ratings were conducted. To break the tie, Lee and David Robb were instructed to redo the evaluation of Babb and plaintiff. Lee claims to have preferred Babb over plaintiff because of Babb's more aggressive nature and efforts to understand the duties and responsibilities of his position. By contrast, Lee described plaintiff as lazy and uninterested in new skills and information. On the basis of these impressions, Lee and Robb decided to lower plaintiff's score of 3 out of 3

possible points in the "communicates openly and honestly" category to 2 out of 3. Plaintiff's overall score thus dropped from 2.2 to 2.1. Plaintiff was now low-man vis-a-vis Babb. On May 11, 1992, plaintiff's low-man ranking caused him to receive a letter informing him that his position was "at-risk".

The May 11 letter informed plaintiff of his ability to participate in a benefits buy-out phase of the RIF plan. Only if the buy-out phase failed to achieve the numerical goals of the RIF plan would plaintiff's position be terminated. On July 13, 1992, plaintiff was notified that the buy-out phase had not been successful in its attaining its numerical objective; therefore, plaintiff's Plant Yates position was being eliminated.

Plaintiff then had the option of choosing between a lump sum buy-out or six-month's participation in the Employee Transition Program ("ETP"). He chose the latter. ETP had been designed to help persons such as plaintiff optimally locate positions elsewhere with GPC, and alternatively outside the company. Through ETP, plaintiff applied with and was rejected for such GPC positions as a marketing representative, a customer service representative, and a safety inspector's position. Plaintiff said he was highly qualified for the safety inspector's position; however, he was not hired for it because after applying the position was closed. (Stone, at 85).

Plaintiff's eligibility for participation in the ETP expired on January 15, 1993. He then filed his complaint of age discrimination with the EEOC on April 1, 1993. Plaintiff alleges that the age discrimination that ultimately resulted in termination manifested itself in two contexts. First, he claims that when he lost the specialist position at Plant Yates, it was to the younger Babb. Second, plaintiff states that his inability to locate alternative employment in Georgia Power through the

---

1. Claiming that you are not aware of someone's age, and simultaneously avowing your opportunity to observe that person's performance, seems a patent inconsistency. Age, like race and gender, is a readily apparent characteristic. In most cases people are confident in their judgment between two subjects that "this person is the younger, or that person is the older, of these

two." And, as the age differential between the two subjects increases, so does the observer's confidence that his or her description is correct.

The age difference between Babb and plaintiff at this time was either around nine or ten years. A question of fact undoubtedly exists as to whether Lee knew plaintiff's age as compared with Babb's.

Employee Transition Program ("ETP") was itself a manifestation of age discrimination.

## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure ("FED.R.CIV.P.") 56(c) provides that summary judgment may be entered in favor of the movant where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is [1] no genuine issue as to any material fact and that [2] the moving party is entitled to judgment as a matter of law." *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Irby v. Bittick,* 44 F.3d 949, 953 (11th Cir.1995).

Under the first element, the issue must be *genuine,* and the factual dispute must be *material* to the outcome of the litigation. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "Materiality" is determined by reference to the substantive law that controls the case. *Id.; Mulhall v. Advance Sec., Inc.,* 19 F.3d 586, 590 (11th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 298, 130 L.Ed.2d 212 (1994). For a question of fact to be "genuine," the party opposing summary judgment " 'must do more than simply show that there is some *metaphysical doubt* as to the material facts,' " *Irby,* 44 F.3d at 953 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986))—the evidence must be of such a quality that "a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Only those doubts about facts that are *reasonable* must be resolved in favor of the nonmovant. *Irby,* 44 F.3d at 953 (citing *Browning v. Peyton,* 918 F.2d 1516, 1520 (11th Cir.1990)).

The second element—that the movant be entitled to judgment as a matter of law—is satisfied where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once a party has moved for summary judgment and properly supported its motion, the burden shifts to the nonmovant to create, through the evidentiary forms listed in Fed.R.Civ.P. 56(c), genuine issues of material fact necessitating a trial. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553.

The substantive law governing claims brought under the ADEA is the same analytic employed in Title VII discrimination cases. Plaintiff faces the initial burden of proving his prima facie case, which may be accomplished through direct, circumstantial, or statistical evidence. Once plaintiff has done so, a slight presumption arises in plaintiff's favor that he was discriminated against. *See* FED.R.EVID. 301. The burden is thus placed upon defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If defendant is successful, the presumption drops from the case, with plaintiff bearing the ultimate burden of persuasion—that defendant's proffered reason was merely a pretext for an impermissible rationale that infected defendant's decision-making process. Disbelief of the proffered reason, although sufficient to support a verdict in favor of plaintiff, is alone insufficient to compel summary judgment for plaintiff. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *Corbin v. Southland Internat'l Trucks,* 25 F.3d 1545, 1548–50 (11th Cir.1994).

### B. Statute of Limitations

Defendant objects that plaintiff's complaint is improper due to untimely filing of his discrimination charge with the EEOC. Prior to initiating a civil action based upon the ADEA, an individual must file a charge of discrimination with the EEOC within 180 days of the alleged unlawful practice. 29 U.S.C. § 626(d). The requisite EEOC charge is not jurisdictional, but rather is in the nature of a statute of limitations; and like a limitations period, the charging period "is subject to waiver, estoppel, and equitable tolling." *Sturniolo v. Sheaffer, Eaton, Inc.,* 15 F.3d 1023, 1025 (11th Cir.1994). Accordingly, the charging period will "not start to run until the facts which would support a

**1584**

charge of discrimination are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Id.*

The discrimination was allegedly revealed to plaintiff upon his ultimate termination. The factual question thus becomes "when did plaintiff have (or when should he have had) sufficient facts to support a charge that he was terminated due to his age?" Defendant suggests two alternative dates on which plaintiff knew he would be terminated: May 11, 1992, and July 13, 1992. Either date would cause plaintiff's EEOC charge to fall outside the 180-day period.

On May 11, 1992, defendant states that plaintiff received an "at risk" letter telling him that his *position* (not read as employment) was being terminated and that nonparticipation by him in the involuntary severance program would *likely* (not read as certainly) cause his *employment* to be terminated. Alternatively, defendant claims to have informed plaintiff of the adverse employment decision—his termination—no later than July 13, 1992. On that date, defendant sent plaintiff a notice, to wit:

> In May, you were notified that your employment may be terminated under the Company's 1992 Fossil and Hydro Workforce Reduction Program. The purpose of this letter is to inform you that in order to achieve the necessary reductions, it has become necessary to *separate you from your job.*
>
> \* \* \* \* \* \*
>
> At any time during this period, you may continue your participation in the program and elect to receive the severance benefits described in the enclosed Summary Plan Description for the Phase III Severance Plan. In the event that you do not *otherwise* discontinue participation in the ETP or *find employment with Georgia Power,* your employment will terminate with the Company on January 15, 1993. You may,

in fact, elect not to participate in the ETP at all and still be eligible for severance benefits under the Phase III plan.

(Exh. 2 to Robb Aff.) (emphasis supplied). Defendant says the contents of this notice conclusively establish that plaintiff knew of the adverse employment decision upon its receipt.

The court does not endorse defendant's reading of the notice. The import of the notice notwithstanding, the employer is still holding a carrot in front of an employee with more than thirteen years' experience—termination will occur, but only if you do not "otherwise ... find employment with Georgia Power." Further, separation from one's "job" is not the equivalent of separation from "the company," which has many "jobs."

■ The court cannot accept May 11, 1992 as the triggering date either, and for similar reasons. Being told your "position" is at risk is not the same as being told you personally are at risk. In a company as large as Georgia Power, an employee with thirteen years' experience might well conclude that notwithstanding the elimination of his "position," he (as a valuable employee) would be placed elsewhere. Indeed, this same reasoning induced plaintiff to accept the assignment (and accompanying wage cut) to Plant Yates.

Plaintiff's deposition supports the court's conclusions with regard to both letters. Notwithstanding defendant's citations to deposition excerpts which they claim establish plaintiff's knowledge,[2] plaintiff plainly states the basis for his belief:

> What they told me is, your position has been eliminated. Not you. Throughout the whole [ETP] program they say, you haven't been eliminated yet. And you know, honestly, I was a fool. I didn't think they would. I thought that down the road they would place me. I mean, I had no reason not to think so.

(Stone depo., at 50) (emphasis supplied). Being informed that your position, as opposed to employment, is being eliminated are different matters. And this is especially so in light of plaintiff's past experiences with GPC, such as the assurances surrounding the Yates transfer.

---

2. For example, defendant points to the following citation to establish plaintiff's knowledge that his "employment" was to be eliminated:

> Q: But you pretty much knew at this time that your position was going to be eliminated?
> A: I knew that—right. I knew that *that position* at that plant was going to be eliminated.

(Stone, at 73). This belief was not baseless. Plaintiff had been told that GPC wanted him to remain, that GPC would find a spot for someone with his experience. Plaintiff's deposition creates a genuine issue of material fact that precludes the entry of summary judgment.

Accordingly, defendant's motion for summary judgment on the basis of the statute of limitations is DENIED.

### C. Sufficiency of Plaintiff's Prima Facie Case

 A plaintiff makes out a prima facie case for age discrimination if he: "(1) demonstrates membership in the protected group; (2) proves discharge; (3) shows qualifications for another position at the time of discharge; and (4) produces evidence which allows a fact-finder to reasonably conclude that the employer intended to discriminate on the basis of race in failing to consider the plaintiff for another position." *Wilson v. AAA Plumbing Pottery Corp.*, 34 F.3d 1024, 1028 (11th Cir.1994). Defendant challenges plaintiff's ability to satisfy the last two elements.

Plaintiff has stated that he was qualified for other positions, among them customer service representative, manufacturer's representative, and safety inspector. Defendant has produced affidavit evidence from the GPC employees who interviewed plaintiff for the positions of customer representative and manufacturer's representative, respectively, David Sherrill and Greg Detwiler. Sherrill stated that he did not hire plaintiff because of the perceived lack of desire by plaintiff and because of the better qualifications of other applicants. Detwiler stated he awarded the position under his control to someone other than plaintiff because of the other applicant's better qualifications. The position for safety inspector was closed after plaintiff applied for it.

Plaintiff has at the least succeeded in carrying his prima facie burden with reference to the safety inspector's job.[3] He has stated that he felt very qualified for that position;

that he applied for the position; and that he was not accepted, *i.e.*, the position was closed.

 Plaintiff has similarly adduced evidence sufficient to allow a reasonable finder of fact to conclude that defendant intended to discriminate on the basis of age. Employees typically seek to satisfy this prima facie element "by proving that the employer replaced them with a younger employee." *Corbin*, 25 F.3d at 1549. In the case *sub judice*, it is undisputed that when it came down to a choice between plaintiff and a younger employee, the younger employee (age 32) was favored over plaintiff (age 42). This is sufficient to carry the prima facie burden. *Id.*

Accordingly, defendant's motion for summary judgment on this basis is **DENIED.**

### D. Evidence of Pretext

 Finally, defendant contends that it is entitled to summary judgment on the basis that plaintiff has failed to produce evidence that its legitimate nondiscriminatory reason ("LNR") is a mere pretext for discrimination. A plaintiff can show pretext "either by showing that a discriminatory reason more likely motivated the employer or by showing that the employer's proffered explanation is unworthy of credence." *Corbin*, 25 F.3d at 1550. If plaintiff's evidence is sufficient for a rational trier of fact to reject defendant's LNR, then that trier of fact may infer intentional discrimination. *St. Mary's Honor Center*, —— U.S. at ——, 113 S.Ct. at 2749. If a possibility of this inference exists, then so does a question of fact that precludes the entry of summary judgment.

A rational trier of fact could easily conclude that Steve Lee and David Robb, in the course of conducting a reevaluation of plaintiff's and Babb's evaluations, considered their ages. Lee's proclaimed ignorance of plaintiff's age notwithstanding, nearly ten years separated Babb and plaintiff. Lee stated he thought plaintiff to be lazy and uninterested in learning new skills. These traits suppos-

---

**3.** The court's finding is not intended as a limitation upon plaintiff's ability to demonstrate quali-

fication for other positions upon trial of the case.

edly translated into a lower rating for plaintiff in the category of "communicates openly and honestly." But if those were truly the reasons, one would think that the point reduction would have come under the "strives for self development" category, or under one of the other categories of evaluation more appropriate for this particular criticism. On this basis, a trier of fact could choose to reject the LNR, and conclude that age was in fact the basis for the decision.

Accordingly, defendant's motion for summary judgment on this basis is **DENIED.**

*E. Plaintiff's Pendent State Claims*

 Because of the predominance of the federal age discrimination claim in this action, the court declines to continue the exercise of supplemental jurisdiction over the pendent state claim for intentional infliction of emotional distress. Accordingly, plaintiff's pendent state claim is **DISMISSED WITHOUT PREJUDICE.**

## III. CONCLUSION

Defendant's motion sought summary judgment on grounds of the statute of limitations, the inability of plaintiff to make out a prima facie case of age discrimination, and plaintiff's lack of evidence establishing pretext. **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IS DENIED.** Defendant also sought summary judgment as to pendent state claims. Because of the predominance of the federal discrimination claims, **PLAINTIFF'S PENDENT STATE CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IS DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**